[No. D010851. Fourth Dist., Div. One. Jan. 15, 1991.]

In re the Marriage of CLASSIE M. and FLETCHER S. TUCKER.
CLASSIE M. TUCKER, Appellant, v.
FLETCHER S. TUCKER, Respondent.

COUNSEL

Susan Hildebrand for Appellant.

Brown & Brown and John P. Knoll for Respondent.

OPINION

BENKE, Acting P. J.—In this case appellant Classie M. Tucker (Classie) appeals that portion of a trial court judgment determining the trial court

did not have jurisdiction over the military retirement benefits of respondent Fletcher S. Tucker (Fletcher).

The trial court found Fletcher did not consent to the trial court's jurisdiction over his military retirement. Further the trial court found Fletcher was not a resident or domiciliary of California either during the parties' marriage or thereafter. These findings are fully supported by the record. Thus, the trial court did not err in finding that, under title 10 United States Code section 1408(c)(4), it had no jurisidiction over Fletcher's military retirement benefits.

## FACTUAL SUMMARY

Classie and Fletcher were married on October 20, 1974, and separated on August 20, 1988. Classie filed a petition for dissolution of their marriage on October 5, 1988.

Before Fletcher filed a response to the petition, his attorney contacted Classie's counsel and told her Fletcher was going to contest the trial court's jurisidiction over his military retirement benefits. According to Fletcher's counsel he told Classie's counsel: " 'There are two ways I can raise this issue. Either by a motion to quash or in my response. Is it all right with you that I raise it with . . . the response rather than the motion to quash? Because these people don't have a lot of money. And that's an economical way of doing it all at once.' "

According to Classie's counsel, she told Fletcher's counsel she had no objection to the procedure he suggested. However according to Classie's counsel, "I didn't mean to suggest, in my agreeing that he was certainly free to do that, that we would waive any right we had to argue the point later, whether that was sufficient to protect his client."

On November 29, 1989, the parties entered into a stipulation and order to show cause which temporarily awarded physical and legal custody of their children to Classie and which provided her $500 a month in child and spousal support. The stipulation stated "Jurisdiction question over retired pay reserved."

Fletcher filed a response to the petition on January 10, 1989. The response asks the superior court to confirm Fletcher's military retirement pay as his separate property, to make a declaration regarding the parties' community and quasi-community property, including proceeds from the sale of the parties' California residence, to award joint legal and physical custody of the parties' children and to make an award of child support. However,

Fletcher's response also states: "Respondent's military retired pay not subject to California jurisdiction—Please see Declaration of Fletcher S. Tucker incorporated herein."

The declaration attached to Fletcher's response states in pertinent part: "I am not a resident of the State of California and therefore request that this Court acknowledge that it should not exercise jurisdiction over my military retired pay since, under the Federal Uniformed Services Former Spouse's Protection Act, I do not consent to jurisdiction and I am not a domiciliary or resident of California. My appearance is not a general appearance but is made solely for the limited purpose of avoiding Default and placing before the Court those issues over which it admittedly has jurisdiction, to wit: child custody, child support, spousal support, and division of property which has its situs in California, excluding military retired pay."

At trial Classie's counsel argued that by filing his response to the petition instead of a motion to quash, Fletcher consented to the trial court's jurisdiction over his military pension. Without reaching the issue of whether Classie's counsel had agreed that Fletcher could challenge jurisdiction in his response, the trial court found that Fletcher had nonetheless preserved the question. Thereafter the court heard testimony from Fletcher as to his domiciliary.

Fletcher testified he was born and raised in South Carolina and joined the Navy in 1960. Until 1977 his military home of record was South Carolina. In 1977 Fletcher changed his home of record to Florida where he was stationed at that time. While in Florida he bought and sold two homes and he and Classie adopted a son, David.

Because David suffers from a disability, Florida provides $200 a month for his support. Fletcher testified that in addition to the support provided by Florida, David also receives special assistance from the California educational system.

In 1984 the Navy stationed Fletcher in San Diego. With the proceeds from the sale of his second Florida house, he and Classie bought a home here. He testified Navy housing was not available to him and his family.

In addition to his active duties with the Navy, for 20 months he worked as a pastor at a local church and for 5 months he worked as a bus driver for Naval recreational services at North Island Naval Base. In order to drive the bus he was required to obtain a California driver's license.

Because of the nonmilitary pay he received while he was in California, Fletcher filed three nonresident state income tax returns. He also voted by absentee ballot in a Florida election.

While Fletcher was here, he was on the board of directors of the Parent-Teachers Association at his children's school and opened a checking account. He also applied to National University but never attended any classes.

Finally, Fletcher testified that at the time he was ordered to San Diego, the thought of retiring here was appealing to him but that in the year before his retirement he had decided to return to Florida. He stated: "California is just—the atmosphere was not for me. Churches were not for me. I wanted to pastor full time. She had expressed she, too, would like to have gone to live in Florida at that point."

On the basis of Fletcher's testimony, the trial court concluded Fletcher had never formed the intent to permanently reside in California and accordingly the trial court had no jurisdiction over Fletcher's military retirement.

A judgment dissolving the marriage, dividing the property over which the parties stipulated the trial court had jurisdiction, providing for spousal and child support, and determining the trial court had no jurisdiction over the military retirement was entered. Classie filed a timely notice of appeal.

## ISSUE ON APPEAL

On appeal Classie argues the trial court erred in declining jurisdiction over Fletcher's military retirement.

## DISCUSSION

### I

### FUSFSPA

In *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728] the United States Supreme Court held that under the supremacy clause of the United States Constitution (art. VI, cl. 2), a state court had no power to divide a military pension upon the dissolution of a marriage. In response to *McCarty*, Congress enacted the federal Uniformed Services Former Spouses' Protection Act (FUSFSPA), 10 United States Code section 1408. FUSFSPA gives state courts the power, under certain conditions, to divide military pensions according to state law. (10 U.S.C. § 1408(c)(1).)

However, a state court may not exercise the power provided by FUSFSPA "unless the court has jurisdiction over the member [of the armed

services] by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court." (10 U.S.C. § 1408(c)(4).)

Classie has not argued, either here or in the trial court, that Fletcher's residency in California was other than because of his military assignment. Rather she contends FUSFSPA provided the trial court with power over Fletcher's military pension because he consented to the trial court's jurisdiction and because in any event he had been a domiciliary of California during their marriage.

## II

### Consent

Classie argues that in asking the trial court to determine property rights, child custody and support issues, Fletcher consented to the jurisdiction of the trial court within the meaning of FUSFSPA. She further argues that because under rule 1234 of the California Rules of Court Fletcher had the right to bring a motion to quash, his response must be interpreted as a consent to the trial court's jurisdiction.

At the outset it is important to resolve an ambiguity in FUSFSPA. As we have indicated a state court has power under FUSFSPA to divide a military pension if the court's jurisdiction is by reason of the military member's "consent to the jurisdiction of the court." (10 U.S.C. § 1408(c)(4)(C).) Classie argues that by consenting to the trial court's resolution of certain portions of the dissolution action—child custody, support and portions of the parties' personal property—Fletcher consented to the trial court's jurisdiction over his pension as well. Classie's position in this regard is consistent with assumptions some courts have made with respect Congress's intent in enacting 10 United States Code section 1408(c)(4)(C). (See e.g. *In re Marriage of Jacobson* (1984) 161 Cal.App.3d 465, 470 [207 Cal.Rptr. 512]; *Gowins* v. *Gowins* (La. 1985) 466 So.2d 32, 35; *Seeley* v. *Seeley* (Tex.Ct.App. 1985) 690 S.W.2d 626, 627.) In one respect at least, Classie's argument is also consistent with considerations of judicial economy. If a member of the military has no objection to having child custody, support and some property issues resolved in a particular forum, it does not serve the interests of judicial economy to permit him to nonetheless insist that division of his military pension be decided in another forum.

On the other hand, Fletcher points out that in *In re Marriage of Hattis* (1987) 196 Cal.App.3d 1162, 1170 [242 Cal.Rptr. 410], this court held a

spouse seeking to divide a military pension under FUSFSPA must show that a member of the military had more than the minimum contacts with the forum necessary for personal jurisdiction. In *Hattis* we found that the provisions of 10 United States Code section 1408(c)(4) were "apparently included in response to concerns about 'forum-shopping' spouses who might seek to divide the pension in a state with more favorable laws, but with little contact with the pensioner. [Citation.]" (*Id.* at p. 1167.) Moreover, our opinion recognized that, in holding FUSFSPA requires the non-military spouse to show more than what is required by a minimum contacts analysis, the result often will be that a court has jurisdiction over all aspects of marriage except disposition of a military pension. "Here, for instance, a minimum contacts approach will support California jurisdiction over [husband] for the purposes of determining his liability for child support [citation] but that same court cannot adjudicate the division of his military pension, even if California law would apply under a choice of law analysis." (*Id.* at p. 1170.)

In light of our statements and holding in *Hattis*, we are not in a position to accept Classie's argument that consent to jurisdiction over one portion of the dissolution proceeding can be interpreted as waiving the additional protection provided to members of the military by FUSFSPA. ■ Plainly, after *Hattis*, the failure to object to California's jurisdiction over all aspects of a divorce cannot be interpreted as an agreement the narrower requirements of FUSFSPA have been satisfied or need not be met. Rather, given *Hattis*, a member of the military such as Fletcher may both agree California has jurisdiction over nonpension issues and at the same time argue California has no power to divide his or her military pension.

■ Having determined Fletcher could object to a portion of the court's jurisdiction in the dissolution proceeding, next we must consider whether he properly asserted his objection. Contrary to Classie's argument, we do not believe he was required to make his objection to the court's power over his pension by way of a motion to quash under California Rules of Court rule 1234.

■ California Rules of Court, rule 1234 permits a motion to quash service of a summons in family law matters but does not require one or provide for any waiver of jurisdictional defenses if a motion is not made. This is in sharp contrast to California Rules of Court, rule 1230(a), which provides that in family law matters the failure to make a motion to quash waives defenses based upon "(1) Petitioner's lack of legal capacity to sue. [¶](2) That there is a prior judgment or another action pending between the same parties for the same cause. [¶](3) That the residence required by Civil Code Section 4530 is lacking. [¶](4) That Civil Code Section 4426 [voidable

marriage] prevents maintenance of the proceeding." Fletcher's FUSFSPA objection does not fall within any of the categories set forth in rule 1230(a).

The permissive nature of California Rules of Court, rule 1234 is consistent with the general rule that in the case of personal jurisdiction no particular form of objection is required. Rather "it is simply necessary to make it clear that the defendant objects to jurisdiction over his person and asks for no other relief. However, the objection of lack of jurisdiction of the person is often raised by a formal *motion to quash summons*, and it is customary, in the *notice of motion*, to use the heading 'special appearance,' or to state at the outset: the moving party, 'appearing specially for the sole purpose,' etc." (2 Witkin, Cal. Procedure (3d. ed. 1985) Jurisdiction, § 150, pp. 534-535.)

■ Here of course, Fletcher need not have been as careful as the usual litigant objecting to personal jurisdiction. As we have discussed, under *Hattis* he may seek relief which is predicated on the court's personal jurisdiction over him and nonetheless maintain his FUSFSPA defense. In this sense after *Hattis* it is perhaps inaccurate and somewhat misleading to describe as "jurisdictional" the defense provided by 10 United States Code section 1408(c)(4). ■ Since the statute was designed to provide protection which is not provided by the due process clause of the federal Constitution, and, as interpreted in *Hattis*, applies even where a court has personal jurisdiction over a member of the military, it is more akin to the doctrine of forum non conveniens than to any lack of personal jurisdiction.

■ Like the provisions of FUSFSPA, forum non conveniens requires that in the interests of fairness and convenience a court with personal jurisdiction over a party nonetheless yield its power in favor of a more appropriate forum. (*Gulf Oil Corp.* v. *Gilbert* (1947) 330 U.S. 501, 506-507 [67 S.Ct. 839, 842].) Thus we believe it is somewhat helpful to note that under both state and federal law, a forum non conveniens defense need not be raised prior to the filing of a responsive pleading. (See Code Civ. Proc., § 410.30, subd. (c); 28 U.S.C. § 1404(a); *American Standard, Inc.* v. *Bendix Corp.* (D.C.Mo. 1980) 487 F.Supp. 254, 258.)

■ In sum, then Fletcher's failure to make a motion to quash did not prevent him from asserting his rights under 10 United States Code section 1408(c)(4). Since a motion to quash was not required to assert either the court's lack of personal jurisdiction or the more closely related defense of forum non conveniens, we see no reason to impose such a condition on the rights created by FUSFSPA.[1]

[1] Our unwillingness to impose such a procedural impediment to assertion of the rights given to members of the military by FUSFSPA is consistent with the Supreme Court's opinion in *Mansell* v. *Mansell* (1989) 490 U.S. 581, 591-592 [104 L.Ed.2d 675, 686-687, 109 S.Ct.

Having determined Fletcher could raise his FUSFSPA defense while tendering other issues to the trial court, and do so in his response to Classie's petition, we have little doubt his response in fact preserved the defense. As the record indicates, Fletcher's counsel raised the issue at every stage of the proceeedings—in his initial conversation with counsel, in the stipulated order and order to show cause and in the response. The fact Fletcher's response also asked the trial court to confirm the retirement benefits as his separate property must be read in conjunction with his repeated and unequivocal reliance on FUSFSPA. Seen in that light, we interpret the request for confirmation as a conditional request made only in the event the FUSFSPA defense was not successful.

## III

### *Domicile*

In finding Fletcher was not domiciled in California, the trial court stated: "I don't think that he was ever here with an intent to remain here permanently or ultimately to retire here. I think he may have considered it. I think it was one of the options he considered. [¶]But on the other hand, what concerns me here is, to carry what I'm saying to a logical conclusion, he's not really a domiciliary of anywhere, or wasn't at the time the parties separated and before his retirement, because I'm not sure he'd made up his mind at that time."

██ The trial court's finding Fletcher never had an intent to reside permanently in California is dispositive on the issue of his domicile. ██ While a person may, at any given time, have more than one residence, he or she may have only one domicile at a time. (*Hawes* v. *Club Ecuestre El Commandante* (1st Cir. 1979) 598 F.2d 698, 701.) Moreover, once a domicile has been established, it is presumed to continue until a new one has been acquired. (*Sadat* v. *Mertes* (7th Cir. 1980) 615 F.2d 1176, 1181; *Hawes* v. *Club Ecuestre El Commandante, supra,* 598 F.2d at p. 701; *Gowins* v. *Gowins, supra,* 466 So.2d at p. 36; Rest.2d. Conf. of Laws (1971) § 19.) In order to establish a new domicile, a person must show " '(1) physical pres-

2023, 2029]. In *Mansell* v. *Mansell,* the court found FUSFSPA was not designed to do away entirely with the federal preemption found in *McCarty* v. *McCarty, supra,* 453 U.S. 210, but in fact continued federal preemption over military retirement when the conditions set forth in 10 United States Code section 1408(c), including in particular the conditions set forth in section 1408(c)(4), do not exist. (*Mansell* v. *Mansell, supra,* 490 U.S. 581, 591-592 [104 L.Ed.2d at pp. 686-687, 109 S.Ct. at pp. 2029-2030].) Viewed in this manner FUSFSPA provides military personnel not with an objection based on personal jurisdiction, but with an objection based on the competency of the forum, an objection which goes to the subject matter jurisdiction of the court and which in general may be raised at anytime. (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction §§ 10, 39-40.)

ence at the new location with (2) an intention to remain there indefinitely.' " (*Scoggins* v. *Pollock* (11th Cir. 1984) 727 F.2d 1025, 1026 quoting *Mas* v. *Perry* (5th Cir. 1974) 489 F.2d 1396, 1399, cert. den. (1974) 419 U.S. 842 [42 L.Ed.2d 70, 95 S.Ct. 74]; see also Rest. 2d, Conf. of Laws (1971) § 18.)

■ Here, having found Fletcher never had an intent to stay in California, the trial court could not find California had ever become Fletcher's domicile. The question then becomes whether the trial court's finding as to Fletcher's intent is supported by substantial evidence. We find that it was. As we have seen, Fletcher testified he voted in a Florida election while he was here, filed nonresident tax returns and maintained Florida as his military home of record. He also testified that, while he considered the possibility, he had never decided to retire in California. We also note that upon his retirement from the military, shortly after the parties' separation, he returned to Florida where he is now employed as pastor of a church. These facts are sufficient to support the trial court's conclusion Fletcher never formed the intent to stay in California and hence never made California his domicile.

CONCLUSION

Because Fletcher never consented to disposition of his military retirement by the trial court and because he never made California his domicile, the trial court did not err in declining to divide his retirement benefits.

Judgment affirmed.

Huffman, J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 27, 1991.