**In the Matter of the MARRIAGE OF
Richard L. BOOKER, Petitioner, and
Betty K. Booker, Respondent.**

**No. 90SC702.**

Supreme Court of Colorado,
En Banc.

July 7, 1992.

Rehearing Denied Aug. 17, 1992.

Lozow, Lozow and Elliott, Jon P. Lozow, Denver, for petitioner.

Doris Besikof, Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *In re Marriage of Booker*, 811 P.2d 405 (Colo.App.1990), the Colorado Court of Appeals reversed the trial court's conclusion that it lacked jurisdiction to grant the request of respondent Betty K. Booker (wife) that she be awarded a portion of a military pension owned by petitioner Richard L. Booker (husband) as marital property. Having granted certiorari to consider the propriety of the Court of Appeals ruling, we reverse.

## I

The Bookers were married in 1959, at which time the husband was a member of the United States Air Force. Upon his retirement from military service in April 1978, he, the wife and their six children resided in Denver, Colorado, until April 1982, when the Bookers separated. In May 1982, the husband moved to Germany in connection with his employment by the United States government as a civilian engineer.

On June 17, 1983, the wife filed a Petition for Dissolution of Marriage or Legal Separation in the District Court for the Second Judicial District of Colorado, pursuant to section 14–10–106, 6B C.R.S. (1987). When the husband refused to accept service of the summons and complaint, the trial court ordered service by publication, pursuant to C.R.C.P. 4(h). Subsequently, the husband received notice by registered mail that a hearing on the wife's petition would be held on March 1, 1984.

The trial court conducted the hearing on that date and entered permanent orders and a decree of legal separation. The husband was neither present nor represented by counsel at the hearing. The decree contained a finding that the trial court had jurisdiction over the parties and the subject matter of the action, granted custody of the parties' two minor children to the wife, and recited that the trial court retained such jurisdiction of the action "as is provided by law." The permanent orders required the husband to pay child support, found that the husband received "full military retirement pay" at the time,[1] and provided that the wife, "shall remain entitled to any and all military benefits, annuities, PX privileges, medical care and other incidences that she has enjoyed as [the husband's] wife." The permanent orders also

---

1. The husband was then receiving military retirement payments of $764 per month gross, including $73 per month from the Veterans Administration.

awarded the family residence to the wife and awarded each party a motor vehicle.

On March 5, 1984, and July 23, 1984, the trial court entered judgments in the dissolution proceedings against the husband for child support arrearages and attorney fees. On July 30, 1984, the wife filed a verified request for the entry of a decree of dissolution of marriage. The request stated, *inter alia*, that the husband "has never entered an appearance or otherwise participated in the action" and recited that a copy of the request had been mailed to the husband.

On October 12, 1984, the trial court entered a decree dissolving the Bookers' marriage, *nunc pro tunc* to September 7, 1984. The decree ordered the parties to perform the provisions of the permanent orders, which were expressly incorporated therein, and stated that the trial court retained such jurisdiction of the action "as is provided by law."

On July 2, 1985, the trial court issued a contempt citation against the husband for failure to comply with prior orders concerning child support payments and attorney fees. A hearing on the citation was set for September 9, 1985. On September 6, 1985, the husband filed a motion to abate child support payments for a limited period of time and to reduce child support payments.[2] The husband appeared at the September 9 hearing, at the conclusion of which the trial court found the husband to be in contempt of court and imposed a sentence with the condition that the husband could purge himself of the contempt by payment of an agreed upon sum into the registry of the court. The husband subsequently reached an agreement with the wife respecting past due child support and attorney fee payments, which agreement was approved by the trial court.

On August 26, 1988, the wife filed a motion with the trial court to divide previously undivided marital property, specifically the military pension,[3] pursuant to section 14-10-113(1), 6B C.R.S. (1987).[4] In March 1989, the husband filed a motion requesting the trial court to order the wife to reimburse him for alleged child support overpayments. The trial court conducted an evidentiary hearing with respect to both motions, and on May 8, 1989, entered an order denying the wife's motion for division of property and granting the husband's motion for reimbursement of child support payments.[5] The trial court concluded that when the permanent orders were entered in 1984 it had no authority to treat the military pension as marital property and that any change in the law occurring after that date could not be applied retroactively.

On appeal, the Court of Appeals reversed. It concluded that pursuant to section 1408(c)(4) of the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408(c)(4) (1988) (the Act), the trial court did not acquire personal jurisdiction over the husband for the purpose of dividing the military pension until the husband filed his motion for reimbursement of child support payments, and that therefore the trial court lacked personal jurisdiction over the

---

**2.** The record before the Court of Appeals did not contain a copy of this motion.

**3.** In *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506 (1976), this court held that a military pension may not be considered marital property for purposes of domestic relations proceedings. In *In re Marriage of Gallo*, 752 P.2d 47 (Colo.1988), this court overruled *Ellis*. The wife's motion was filed subsequent to our decision in *Gallo*.

**4.** Section 14-10-113(1) states in pertinent part as follows:

> **Disposition of property.** (1) In a proceeding for dissolution of marriage or in a proceeding for legal separation or in a proceeding for disposition of property following the

previous dissolution of marriage by a court which at the time of the prior dissolution of the marriage lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse his property and shall divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors....

§ 14-10-113(1), 6B C.R.S. (1987). The wife alternatively argued that the trial court had authority to divide the military pension pursuant to C.R.C.P. 60(b). That issue is not raised in this appeal.

**5.** The wife has not contested the trial court's ruling with respect to the husband's motion.

husband for such purpose in 1984. The Court of Appeals also concluded that applying the rule of *In re Marriage of Gallo*, 752 P.2d 47 (Colo.1988), to this case would not constitute retroactive application of the rule announced therein.

## II

### A

The husband asserts that the trial court had no authority in 1989 to divide his military pension as marital property. We agree.

■ In dissolution of marriage proceedings, a trial court must have personal jurisdiction over the parties as well as subject matter jurisdiction to enter orders establishing financial responsibilities and property interests of the parties. *People in re Clinton*, 762 P.2d 1381 (Colo.1988). *See* 1 Homer Clark, Jr., *The Law of Domestic Relations in the United States*, § 13.4 at 756 (2d ed. 1988). Both parties agree that the trial court had requisite personal and subject matter jurisdiction in 1984 to enter binding permanent orders, including awards of maintenance and child support and division of marital property located in Colorado. The parties disagree as to whether the trial court had authority in 1989 to divide the husband's military pension.

■ The husband contends that the trial court acquired the requisite personal jurisdiction over him in 1983 to consider the status of his military pension by virtue of sections 13–1–124(1)(e) and 13–1–125(1), 6A C.R.S. (1987), and Colorado Rules of Civil Procedure 4(k), relating to refusal of service, and 4(g), relating to service by publication.[6] The record does not clearly establish that on August 8, 1983, the process server both stated the name of the process to the husband and offered to deliver a copy thereof to the husband, as required by C.R.C.P. 4(k). However, the record does establish that service on the husband was accomplished in 1983 by publication. Thus the trial court had personal jurisdiction over the husband in 1984 for purposes of determining the status of the marriage; awarding custody of the minor children, child support and maintenance; and dividing marital property located in Colorado. *See In re Marriage of Tucker*, 226 Cal. App.3d 1249, 277 Cal.Rptr. 403 (1991).

■ The permanent orders entered by the trial court on March 1, 1984, included a division of the parties' marital property located in Colorado. At that time, pursuant to Colorado common law, the husband's military pension did not constitute divisible marital property. *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506 (1976), *overruled by In re Marriage of Gallo*, 752 P.2d 47 (Colo. 1988). Thus at the time the dissolution decree was entered the wife had no interest in the husband's military pension and the trial court had no authority to award the wife any interest therein. The trial court

---

**6.** Section 13–1–124(1)(e) provides as follows:

> **Jurisdiction of courts.** (1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a natural person, his personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from.... (e) The maintenance of a matrimonial domicile within this state with respect to all issues relating to obligations for support to children and spouse in any action for dissolution of marriage, legal separation, declaration of invalidity of marriage, or support of children if one of the parties of the marriage continues without interruption to be domiciled within the state.

§ 13–1–124(1)(e), 6A C.R.S. (1987).

Section 13–1–125(1) provides as follows:

> **Service of Process.** (1) Service of process upon any person subject to the jurisdiction of the courts of Colorado may be made by personally serving the summons upon the defendant or respondent outside this state, in the manner prescribed by the Colorado rules of civil procedure, with the same force and effect as if the summons had been personally served within this state.

§ 13–1–125(1), 6A C.R.S. (1987).

C.R.C.P. 4(k) states as follows:

> **(k) Refusal of Copy.** If the person to be served refuses to accept a copy of the process, service shall be sufficient if the person serving the same shall state the name of the process and offer to deliver a copy thereof.

C.R.C.P. 4(k). C.R.C.P. 4(g) authorizes service by mail or publication in cases "affecting specific property or status or other proceedings in rem."

considered this fact in entering its various orders in 1984.[7] The permanent orders entered on March 1, 1984, provided that the wife "shall remain entitled to any and all military benefits, annuities, PX privileges, medical care and other incidences that she has enjoyed as [the husband's] wife." The permanent orders were subsequently expressly incorporated into the ultimate dissolution decree, which decree provided that the trial court retained continuing jurisdiction over the action "as is provided by law."

In our view, the above-quoted language of the permanent orders ensured only that the wife could continue receiving benefits to which she was entitled as a military spouse during the period of the parties' legal separation. We thus construe the language of the permanent orders and the dissolution decree referring to the trial court's continuing jurisdiction in the case to refer only to such authority to divide marital property as the trial court had under Colorado law on the dates the order and decree were entered. Thus, although the trial court retained personal jurisdiction over the husband with respect to all other aspects of the dissolution decree, it did not "retain" jurisdiction to subsequently treat the husband's military pension as marital property of both parties.

The Court of Appeals concluded that the trial court lacked personal jurisdiction over the husband in 1984 and thus, pursuant to section 14–10–113(1), 6B C.R.S. (1987),[8] had authority in 1989 to divide marital property. However, as we have indicated, the trial court acquired personal jurisdiction over the husband in 1983 under Colorado Rules of Civil Procedure for purposes of dividing all marital property located in Colorado. The provisions of section 14–10–113(1) are therefore not applicable.

## B

The Court of Appeals also concluded that in 1984 the trial court lacked jurisdiction to divide the husband's military pension under applicable provisions of the Act, but acquired such jurisdiction in 1989 when the husband filed a motion for reimbursement of child support payments. Assuming, *arguendo*, that the provisions of the Act are applicable to this case,[9] we reject the Court

7. The wife's financial affidavit listed the husband's military pension as an asset owned by the husband. Furthermore, in the permanent orders the trial court ordered an assignment of wages against the husband's military retirement pay respecting child support obligations and granted the wife the entire equity in the family residence.

8. *See* note 4.

9. Section 1408(c) of the Act provides in pertinent part as follows:

(1) *Subject to the limitations of this section,* a court may treat disposable retired or retainer pay payable to a member [of the military] for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

....

(4) A court may not treat the disposable retired or retainer pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.

10 U.S.C. § 1408(c)(1) and (4) (1988) (emphasis added). The Act was adopted by the Congress in 1982 in response to the decision of the United States Supreme Court in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), holding that state courts had no jurisdiction under any circumstances to treat retirement pay of a military member as marital property. *Mansell v. Mansell,* 490 U.S. 581, 584, 109 S.Ct. 2023, 20, 104 L.Ed.2d 675 (1989); *In re Marriage of Gallo,* 752 P.2d 47, 50 (Colo.1988). *See* Peter Mallory, *Military Retired Pay and Divorce: Congress Retires McCarty v. McCarty—Is That Enough?,* 40 Wash. & Lee L.Rev. 271 (1983). There is some support for the argument that the Act is not applicable to dissolution proceedings in states that do not treat military pension as marital property of both spouses. *See Petters v. Petters,* 560 So.2d 722, 727 (Miss. 1990) (Sullivan, J., dissenting). Most authorities view the language of § 1408(c)(1) as constituting an absolute bar to the exercise of any jurisdiction by state courts for any purpose over military pensions absent compliance with the personal jurisdiction requirements established by § 1408(c)(4). *See, e.g., In re Marriage of Tucker,* 226 Cal.App.3d 1249, 277 Cal.Rptr. 403 (1991); *Allen v. Allen,* 484 So.2d 269 (La.App. 1986); *Seeley v. Seeley,* 690 S.W.2d 626 (Tex. App.1985).

of Appeals conclusion that in 1989 the trial court first obtained jurisdiction pursuant to the Act to divide the husband's military pension.

■ The question of whether a trial court acquires jurisdiction over a military member's military pension is governed not by principles of state rules of in personam jurisdiction or procedure, but rather by the specific terms of the Act that, by virtue of the Supremacy Clause of the United States Constitution, in effect preempt state rules of procedure insofar as jurisdiction to consider this particular asset is concerned. U.S. Const. art. VI, cl. 2; *Petters v. Petters*, 560 So.2d 722 (Miss.1990); *Mortenson v. Mortenson*, 409 N.W.2d 20, 22 (Minn. App.1987); *Kovacich v. Kovacich*, 705 S.W.2d 281, 283 (Tex.App.1986). *See Allen v. Allen*, 484 So.2d 269 (La.App.1986).

Section 1408(c)(4) prohibits state courts from exercising authority to determine the status of a military member's pension unless personal jurisdiction over the member is acquired by one of three specific methods. This limitation was apparently adopted to curtail "forum-shopping" by spouses who might file proceedings in states with favorable marital property laws but with which the military pensioner had little contact. *Petters v. Petters*, 560 So.2d 722 (Miss.1990); *In re Marriage of Hattis*, 196 Cal.App.3d 1162, 242 Cal.Rptr. 410 (1987). Many courts have concluded that section 1408(c)(4) constitutes a limitation on the subject matter jurisdiction of state courts over military pensions. *Steel v. United States*, 813 F.2d 1545 (9th Cir.1987); *Lewis v. Lewis*, 695 F.Supp. 1089 (D.Nev. 1988); *see Allen v. Allen*, 484 So.2d 269

(La.App.1986); *Seeley v. Seeley*, 690 S.W.2d 626 (Tex.App.1985). Other courts have construed the statute as restricting state court exercise of otherwise valid in personam jurisdiction over military personnel. *Kovacich*, 705 S.W.2d at 282; *see Seeley*, 690 S.W.2d at 627. Whatever the theory, the Congress has in effect both permitted state courts to consider what status to accord military pensions in the context of dissolution proceedings and prescribed the manner by which personal jurisdiction must be obtained over the military member who is a party to such proceedings before they may apply the substantive laws of their states to that particular asset.

■ In the circumstances of this case, neither the residence nor the domicile requirement of section 1408(c)(4) of the Act has been satisfied at any time. The husband contends that he consented to the trial court's personal jurisdiction over him for purposes of the Act in 1983 and 1984 by failing to assert any defense of lack of personal jurisdiction in the dissolution proceedings. We disagree.

C.R.C.P. 12(b) permits a party to assert the defense of lack of personal jurisdiction either by responsive pleading or by motion.[10] C.R.C.P. 12(g) and 12(h)(1) provide that if a party filing a motion under C.R.C.P. 12(b) omits their available defenses of lack of jurisdiction over the person or insufficiency of process, such omitted defenses are waived. *Board of County Comm'rs v. District Court*, 172 Colo. 311, 472 P.2d 128 (1970). In this case, the husband failed to assert a defense of lack of personal jurisdiction by responsive pleading

---

**10.** C.R.C.P. 12 provides in pertinent part as follows:

(b) **How Presented.** Every defense, in law or in fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (2) lack of jurisdiction over the person....

(g) **Consolidation of Defenses in Motion.** A party who makes a motion under this Rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this Rule but omits therefrom any defense or objection then available to him which this Rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted ...

(h) **Waiver or Preservation of Certain Defenses.** (1) A defense of lack of jurisdiction over the person, insufficiency of process, or insufficiency of service of process is waived: (A) If omitted from a motion in the circumstances described in section (g); or (B) if it is neither made by motion under this Rule nor included in a responsive pleading....

C.R.C.P. 12(b), (g) and (h)(1).

or by motion, and thus waived his right to do so.

■ However, the question of consent for purposes of the Act is not whether the military member simply waived his right to contest personal jurisdiction under state procedural rules. The statutory language requires some form of affirmative conduct demonstrating express or implied consent to general in personam jurisdiction. *Kildea v. Kildea*, 143 Wis.2d 108, 420 N.W.2d 391 (1988) (general appearance as well as failure to timely object to personal jurisdiction constitute consent); *Seeley v. Seeley*, 690 S.W.2d 626 (Tex.App.1985) (independent invocation of trial court's jurisdiction on issue other than question of personal jurisdiction constitutes consent); *In re Marriage of Parks*, 48 Wash.App. 166, 737 P.2d 1316 (1987) (seeking affirmative relief in original dissolution proceeding constitutes implied consent); *Allen v. Allen*, 484 So.2d 269, 275 (La.App.1986) (the Act does not require express consent and military spouse can give implied consent to a state court's jurisdiction by making a general appearance and waiving all jurisdictional objections). The husband did not enter a general appearance in the dissolution proceedings in 1983 or 1984. Moreover, his refusal to accept service of process in August of 1983 demonstrated that at that time he did not consent to the trial court's exercise of general personal jurisdiction over him as contemplated by the Act.

■ On September 6, 1985, the husband filed a motion to abate in part and to reduce child support payments. This request for affirmative relief from the trial court did constitute consent to personal jurisdiction over the husband as contemplated by section 1408(c)(4) of the Act. However, at that time the husband's interest in his military pension did not constitute marital property. *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506 (1976),[11] overruled in *In re Marriage of Gallo*, 752 P.2d 47 (Colo.1988). Thus any personal jurisdiction then acquired by the trial court to consider the status of the husband's military pension did not include authority to grant the wife any interest in that pension. Our 1988 decision in *In re Marriage of Gallo* may not be applied retroactively. *See In re Marriage of Wolford*, 789 P.2d 459 (Colo.App.1989). The trial court had no more authority in 1989 to treat the husband's military pension as marital property than it did in 1985 when, assuming the applicability of the Act, it acquired jurisdiction thereunder to consider the status of that asset.

### III

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

VOLLACK, J., specially concurs in the judgment only and ROVIRA, C.J., and ERICKSON, J., join in the special concurrence.

Justice VOLLACK specially concurring in the judgment only:

We granted certiorari in this case to determine "whether the court of appeals erred in holding that the trial court did not have personal jurisdiction over the [husband] prior to 1989 and that *In re Marriage of Wolford*, 789 P.2d 459 (Colo.App. 1989) [holding that *In re Marriage of Gallo*, 752 P.2d 47 (Colo.1988), could not be applied retroactively], was not applicable to this case." I agree with the majority's conclusions that the "trial court acquired personal jurisdiction over the husband in 1983 under the Colorado Rules of Civil Procedure for purposes of dividing all marital property," op. at 738, and that our decision in *In re Marriage of Gallo*, 752 P.2d 47 (Colo.1988) (holding that military pensions constitute marital property), "may not be applied retroactively." Op. at 740.

In my opinion, however, the majority unnecessarily goes beyond the scope of our grant of certiorari by analyzing whether the trial court had personal jurisdiction under the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408(c)(4) (1988) (the Act). Instead of analyzing whether personal jurisdiction existed under the Act, we should simply hold that the

---

**11.** *See* note 3.

Act's jurisdictional provisions were inapplicable to the present case and that the court of appeals erred when it relied on the Act's provisions in its decision.

10 U.S.C. § 1408(c)(1) (1982) provides:

Subject to the limitations of this section, *a court may treat disposable retired or retainer pay* payable to a member for pay periods beginning after June 25, 1981, *either as property* solely of the member *or as property* of the member and his spouse *in accordance with the law of the jurisdiction of such court.*

(Emphasis added.)

10 U.S.C. § 1408(c)(4) (1982) provides:

A court may not treat the disposable retired or retainer pay of a member *in the manner described in paragraph (1)* unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.

(Emphasis added.)

A plain reading of the statute indicates that a prerequisite to applying the jurisdictional provisions in the Act is that a state must first recognize that a military pension is property. In 1983, 1984, and 1985—during which time the wife filed the dissolution of marriage petition, the trial court issued its permanent orders, and the husband filed a motion and personally appeared in court—Colorado did not recognize military pensions as "property." *Ellis v. Ellis*, 191 Colo. 317, 319, 552 P.2d 506, 507 (1976) (holding that "military retirement pay is not 'property' under the dissolution of marriage act").

The jurisdictional provisions in the Act did not apply to the dissolution proceeding in this case because Colorado did not recognize military pensions as marital property until this court's decision in *In re Marriage of Gallo*, 752 P.2d 47 (Colo.1988). Thus, the court of appeals erred when it relied on the Act to determine whether the trial court had personal jurisdiction over the husband for purposes of dividing the military pension in 1983.

I am authorized to say that Chief Justice ROVIRA and Justice ERICKSON join in this special concurrence in the judgment only.