**Amy L. WAGNER, Appellant,**

v.

**Michael F. WAGNER, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 25, 1999.

Filed June 4, 1999.

Reargument Denied Aug. 12, 1999.

---

Mark A. Criss, Cranberry, for appellant.

Mary S. Ramsden, Pittsburgh, for appellee.

Before HUDOCK, MUSMANNO and TAMILIA, JJ.

HUDOCK, J.:

¶ 1   Amy L. Wagner (Wife) brings this interlocutory appeal by permission after the trial court granted Michael F. Wagner's (Husband's) preliminary objection to the court's jurisdiction.   This case raises the novel question of when a state court presiding over a divorce action may equita-

bly distribute a military spouse's pension pursuant to the Uniformed Services Former Spouses' Protection Act (Act), 10 U.S.C. sections 1401–1412. Because we conclude that the trial court erred in its interpretation of the federal law when it concluded that it had no jurisdiction over Husband's pension, we reverse.

¶ 2 The facts and procedural history can be summarized as follows: The parties were married in Butler, Pennsylvania, on August 14, 1982. They are the parents of one child, John, born April 15, 1991. For the entire time the parties have been married, Husband has been on active duty as an officer in the United States Air Force. While Husband is currently stationed in New Mexico, he is a legal resident of the state of Alaska.

¶ 3 The parties separated in 1992 and Wife moved to Butler. Wife originally filed a divorce complaint in the Court of Common Pleas of Butler County on June 24, 1994. After the complaint was reinstated on September 6, 1995, Husband was personally served with a copy of the reinstated complaint. Thereafter, on February 16, 1996, Lee A. Montgomery, Esquire, filed a general appearance in Butler County on Husband's behalf.

¶ 4 Subsequently, the trial court held several hearings regarding Husband's noncompliance with Wife's discovery requests. Husband participated in these hearings via his attorney. Thereafter, the trial court entered an order on February 4, 1998, scheduling a bifurcation hearing for May 8, 1998. The court specifically noted that no further continuances would be allowed. On May 4, 1998, Husband, represented by new counsel, served Wife with notice of "Preliminary Objections to Pennsylvania Jurisdiction." In this preliminary objection,[1] Husband contended that Pennsylvania courts could not equitably distribute his military pension because they had not acquired jurisdiction over the pension pursuant to section 1408(c)(4) of the Act. This

was the first time Husband objected, in any form, to the jurisdiction of Pennsylvania courts.

¶ 5 By agreement of counsel, this objection was presented to the Court on May 7, 1998—two years and seven months after Husband accepted personal service of the reinstated complaint. After oral argument, the trial court concluded that Husband's preliminary objection was timely because it raised an issue of subject matter jurisdiction. Moreover, the trial court agreed that Husband had not consented to the Butler County court's exercise of subject matter jurisdiction over Husband's military pension. Therefore, in an order dated May 14, 1998, the trial judge sustained the preliminary objection, concluding that it did not have subject matter jurisdiction over Husband's military pension.

¶ 6 In order to petition this Court for allowance of an interlocutory appeal, Wife asked the trial court to amend its May 14th order to indicate that it presented a controlling issue of law. After the trial court so amended the order, Wife sought permission from our Court to appeal pursuant to 42 Pa.C.S.A. section 702. *See also* Pa.R.A.P. 312, 1311 (explaining the procedures of interlocutory appeals by permission). On July 9, 1998, we granted Wife's request and this appeal followed.

¶ 7 Wife raises three questions for our review:

1. Were [Husband's] Preliminary Objections untimely filed in that the preliminary objection raised a question of *in personam* jurisdiction 949 days after service of the Divorce Complaint?

2. Did [Husband] participate in the Pennsylvania divorce proceedings such that his consent to Pennsylvania's jurisdiction to equitably distribute his military retirement pay may be inferred?

---

1. While Husband titled the document he submitted to the trial court as "Preliminary Ob-

jections," we have reviewed the submission and it raised only one objection.

3. Are there important considerations of public policy under state and federal law, including judicial economy, and the balancing of rights of servicepersons and their spouses inherent in the federal legislation, which ought to be considered by the court, and which militate in favor of a determination that Pennsylvania has both subject matter and *in personam* jurisdiction sufficient to distribute [Husband's] military retirement pay?

Wife's Brief at 4. Wife ostensibly presents three discrete questions for our review. Nevertheless, each of these questions is a facet of her main contention before this Court: that the trial court erred in concluding that the Act sets forth a test for subject matter jurisdiction. Consequently, we will address all of Wife's questions together.

■ ¶ 8 In his preliminary objection, Husband contended that the trial court did not have subject matter jurisdiction over his military pension. "When a party uses a preliminary objection in the nature of a petition raising a question of subject matter jurisdiction, the court's function is to determine whether the law will bar recovery due to the lack of such jurisdiction." *Philadelphia Housing Auth. v. Barbour*, 405 Pa.Super. 140, 592 A.2d 47, 48 (1991), *aff'd per curiam*, 532 Pa. 212, 615 A.2d 339 (1992).

¶ 9 Initially, we note that Husband does not claim that the Act prevents the equitable distribution of military pensions in divorce proceedings. In fact, such an argument would be inimical to Federal and Pennsylvania law. *See Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) (holding that military retirement benefits are marital property subject to equitable distribution); *Martin v. Martin*, 385 Pa.Super. 554, 561 A.2d 1231 (1989) (same). Instead, Husband merely argues that the Pennsylvania court system has no jurisdiction to distribute his pension in the instant case.

¶ 10 Pursuant to the supremacy clause of the federal constitution, the question of how a state court acquires jurisdiction over a service member's pension is not governed by state rules regarding jurisdiction or procedure; rather, the provisions of the Act itself define when a state court may exercise jurisdiction. U.S. CONST. art. VI, cl. 2; *accord In re Booker*, 833 P.2d 734, 739 (Colo.1992). Therefore, we must first consider the language of the Act itself. The pertinent part of the Act provides:

§ 1408. **Payment of retired or retainer pay in compliance with court orders**

(a) **Definitions.** In this section:

(1) The term "court" means—

(A) any court of competent jurisdiction of any State. . . .

\* \* \*

(c) **Authority for court to treat retired pay as property of the member and spouse.**

(1) Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

\* \* \*

(4) A court may not treat the disposable retired pay of a member in the manner described in paragraph (1) *unless the court has jurisdiction over the member* by reason of

(A) his residence, other than because of military assignment, in the territorial jurisdiction of the court,

(B) his domicile in the territorial jurisdiction of the court, or

(C) *his consent to the jurisdiction of the court.*

10 U.S.C. § 1408(a), (c) (emphasis added). The parties agree that Husband neither resides in nor is a domiciliary of the Commonwealth of Pennsylvania. Therefore, the question is whether Husband has consented to the jurisdiction of Pennsylvania courts. The parties cite no cases, nor has our research disclosed any cases, that interpret this section of the Act in the context of a Pennsylvania divorce proceeding.

¶ 11   The courts of several of our sister states, however, have considered the question of whether section 1408(c)(4) of the Act requires a serviceperson's consent to a state court's exercise of personal or subject matter jurisdiction. Nevertheless, these courts have not reached a consensus regarding the type of jurisdiction Congress contemplated when it authored the Act. *See, e.g., Kildea v. Kildea*, 143 Wis.2d 108, 420 N.W.2d 391, 393 (App.1988) (holding that section 1408(c)(4) of the Act concerns personal jurisdiction); *Kovacich v. Kovacich*, 705 S.W.2d 281, 282 (Tex.App. 1986) (concluding that state courts may divide military retirement benefits if there is proper personal jurisdiction of the service member). *But see, e.g., In re Akins*, 932 P.2d 863, 866 (Colo.Ct.App.1997) (stating without analysis that section 1408(c)(4) is a limitation on the subject matter jurisdiction of state courts). *Compare In re Booker*, 833 P.2d at 739 (collecting cases) (explaining that, while the court declined to decide whether section 1408(c)(4) pertains to subject matter or personal jurisdiction, state courts must apply the consent test of the Act prior to applying the substantive laws of their state regarding distribution). Consequently, we will undertake to analyze the provisions of the Act ourselves.

¶ 12   The object of all statutory interpretation is to ascertain and effectuate the intent of the legislative body. *McClellan and Shotel v. Health Maint. Org.*, 442 Pa.Super. 504, 660 A.2d 97, 100 (1995), *aff'd by an equally divided court*, 546 Pa. 463, 686 A.2d 801 (1996). *Cf.* Statutory Construction Act, 1 Pa.C.S.A.

§§ 1501–1991. Additionally, whenever possible, we must interpret a statute according to the plain meaning of its language, interpreting words and phrases according to the rules of grammar and their common and approved usage. *Id.* In this regard, we note that the Act itself does not define the type of jurisdiction a state court must acquire before it can distribute the pension of a serviceperson under subsection 1408(c)(4)(C). Nevertheless, both subsection (c)(4)(A), residency, and subsection (c)(4)(B), domicile, of the Act are traditional tests of personal jurisdiction. *See generally In re Huck*, 435 Pa. 325, 333, 257 A.2d 522, 525 (1969) (Bell, C.J., with four justices concurring in the result). By virtue of these provisions, so long as a state court has personal jurisdiction over the serviceperson by virtue of his residency or domicile, the Act permits equitable distribution of the military pay. Therefore, if, for example, Wife had brought this divorce action in Alaska, where Husband maintains his residency, there would be no question that the provisions of the Act would apply.

¶ 13   Certainly, it would be quite unusual, if not incongruous, for Congress to construct a law with three alternative bases of "jurisdiction," but then choose to make two of the alternatives bases of personal jurisdiction and one of them a basis of subject matter jurisdiction. Consequently, we hold that subsection 1408(c)(4)(C) of the Act refers to consent to personal jurisdiction and not to subject matter jurisdiction.

¶ 14   Moreover, a review of the history and purposes of the Act supports our conclusion that subsection 1408(c)(4)(C) pertains to personal jurisdiction. Congress enacted section 1408 in direct response to the United States Supreme Court's decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In *McCarty*, the Supreme Court held that military retirement pensions could not be divided between divorcing spouses in com-

munity property states.[2] *Id.* at 235–36, 101 S.Ct. 2728. By enacting the Act, Congress sought to ensure that courts could "again consider military retired pay when fixing the property rights between the parties to a divorce, dissolution, annulment or legal separation." S.REP. No. 97–502, at 1 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1596. The legislative history, unfortunately, is silent with regard to the purpose of section 1408(c)(4). Apparently, however, this section of the bill was added after it was reported from the Senate Committee on Armed Services to the floor of the Senate because some members of Congress raised concerns regarding forum shopping by civilian spouses. *See, e.g., In re Booker*, 833 P.2d at 739 (explaining that Congress was concerned that civilian spouses might file proceedings in states with favorable marital property laws but with which the military member had little contact). Despite such concerns, it is clear that Congress intended for the Act to ensure the ability of state courts to distribute military pensions in the context of a divorce proceeding.

¶ 15 Wife urges upon us the conclusion that Husband's failure to object to personal jurisdiction in a timely manner pursuant to Pennsylvania's rules of court barred him from raising the issue of jurisdiction mere days before the bifurcation hearing was to be held. As the Colorado Supreme Court noted, however, "the question of consent for purposes of the Act is not whether the military member simply waived his right to contest personal jurisdiction under state procedural rules. The statutory language requires some form of affirmative conduct demonstrating express or implied consent to general *in personam* jurisdiction." *In re Booker*, 833 P.2d at 740 (holding that husband's refusal to accept service of process regarding the divorce complaint and failure to enter a general appearance in the divorce proceedings sufficiently demonstrated his objection to

the jurisdiction of Colorado courts pursuant to section 1408(c)(4) of the Act). *But see Kildea*, 420 N.W.2d at 393–94 (holding that a general appearance as well as the failure to object in a timely manner to personal jurisdiction constitutes consent); *In re Marriage of Parks*, 48 Wash.App. 166, 737 P.2d 1316, 1318 (1987) (seeking affirmative relief in a dissolution proceeding constitutes implied consent); *Allen v. Allen*, 484 So.2d 269, 271 (La.Ct.App.1986) (concluding that the Act does not require express consent and that a military spouse can give implied consent to a state court's jurisdiction by making a general appearance and waiving all jurisdictional questions); *Seeley v. Seeley*, 690 S.W.2d 626, 628 (Tex.App.1985) (stating that the independent invocation of a trial court's jurisdiction on an issue other than the question of personal jurisdiction constitutes consent). Thus, we must look to the record to determine if Husband has either expressly or impliedly consented to the jurisdiction of Pennsylvania courts.

¶ 16 Husband claims that he has regularly objected to Pennsylvania's exercise of *in personam* jurisdiction over his person since Wife first filed the complaint in divorce. After reviewing the record, we cannot agree. Initially, unlike the facts of *Booker*, Husband accepted personal service of the reinstated divorce complaint on September 28, 1995, while he was stationed at Maxwell Air Force Base, Montgomery County, Alabama. As the trial court noted, while the divorce complaint did not specifically mention Husband's military pension, it did serve to place Husband on notice that Wife planned to seek equitable distribution of the parties' martial assets. *See* Trial Court Opinion, 5/14/98, at 1. Moreover, Husband then secured counsel who entered an appearance on his behalf in Butler County. While we recognize that the entry of a written appearance does not constitute a waiver of the right to raise

---

2. Pennsylvania, it should be noted, is not a community property state. Consequently, it

is questionable whether the *McCarty* decision had any effect within our Commonwealth.

questions of jurisdiction under Pennsylvania's Rules of Civil Procedure, see Pa. R.C.P. 1012(a), we agree with the Colorado Supreme Court insofar as it concluded that such activity by a military spouse is inconsistent with an intent to object to jurisdiction pursuant to the Act. *In re Booker*, 833 P.2d at 740. Additionally, through his attorney, Husband has participated in numerous hearings regarding discovery disputes, complied with discovery orders setting sanctions of counsel fees and answered Wife's first set of interrogatories. Moreover, Husband appeared in person at an ancillary support modification conference in Butler County. In this regard, we concur with the conclusion of the Texas courts that a military spouse's consent to a particular state's jurisdiction on matters other than the narrow question of *in personam* jurisdiction tends to indicate that the military spouse wishes to make a general appearance. *See, e.g., Seeley*, 690 S.W.2d at 628.

¶ 17   Therefore, our review of the record demonstrates that, for almost three years, Husband participated as the Butler County courts adjudicated the dissolution of the parties' marriage. In other words, for purposes of the Act, until four days prior to the bifurcation hearing, Husband "consented" to Pennsylvania jurisdiction through his defense of the divorce proceeding. If Husband had wanted to object to Pennsylvania jurisdiction, he could have refused service of process, immediately filed a preliminary objection raising the question of personal jurisdiction or simply declined to participate in the divorce proceeding.[3] In summation, we conclude that the record demonstrates that Husband has

consented to personal jurisdiction in Pennsylvania pursuant to subsection 1408(c)(4)(C) of the Act.

¶ 18   Public policy and principles of judicial economy also militate in favor of a conclusion that the Butler County Court of Common Pleas has jurisdiction to distribute Husband's military pension. As already demonstrated, Congress intended the Act to expand, not contract, the ability of competent state courts to distribute a military spouse's pension rights. Nevertheless, Husband contends that Wife merely needs to bifurcate the distribution of the military pension from the rest of the Butler County divorce action and then bring suit in Alaska to enforce her right to equitable distribution of Husband's pension. He further avers that Alaska law allows Wife to bring such a suit after the Pennsylvania divorce proceedings end. *See* Husband's Brief at 20–21. Because Husband does not contest the power of the Alaska state courts to distribute his military pension ancillary to a Pennsylvania divorce decree, he is arguing, in effect, that this Court should require Wife to complete the divorce proceedings in Butler County, then travel to Alaska in order to effectuate the distribution of Husband's military retirement pay.[4] Even if Congress was concerned with the consequences of forum shopping by civilian spouses when it crafted section 1408(c)(4) of the Act, we cannot imagine that it contemplated or intended such an absurd result.[5]

¶ 19   The trial court heavily relied upon *dicta* found in *Steel v. United States*, 813 F.2d 1545 (9th Cir.1987), in support of its

---

**3.** In the latter case, as the note to Pa.R.C.P. 1920.46 explains, no judgment may be entered against a military spouse unless the court first protects his or her interests by appointing an attorney to represent the military spouse.

**4.** As a point of reference only, we note that, like the situation regarding Pennsylvania, Husband has had limited contacts with Alaska during the time the parties were married.

**5.** Moreover, we do not see any evidence of forum shopping by Wife in this action. The parties were married in Butler, Pennsylvania, in 1982. While not completely clear from the record, it does appear that Wife was originally from Butler. Consequently, we see no support for an argument that Wife has purposefully chosen to avail herself of the Pennsylvania divorce code.

conclusion that subsection 1408(c)(4)(C) pertains to subject matter jurisdiction:

A careful reading reveals that this provision is a limitation on subject-matter rather than personal jurisdiction. A court otherwise having jurisdiction of the parties is not allowed to invoke the powers of [the Act] **unless personal jurisdiction has been acquired by** domicile or **consent** or residence other than by military assignment.

*Id.* at 1552 (emphasis added). The trial court states in its opinion that this *dicta* establishes that subsection 1408(c)(4)(C) contemplates subject matter rather than personal jurisdiction. We disagree.

¶ 20 First, the Ninth Circuit in *Steel* was interpreting section (c) of the Act as a whole. Second, the Ninth Circuit Court of Appeals was attempting to decide if the Act had any applicability to the specific question posed by *Steel*; to-wit, which of two divorce judgments, one obtained by the wife in California or one obtained by the husband in Virginia, had priority. The court ultimately concluded that section 1408(c) of the Act was "clearly inapplicable to the case at hand." *Id.* Finally, and most importantly, the *dicta* cited by the trial court *does not establish* that subsection 1408(c)(4)(C) allows a military spouse to object to a state court's exercise of jurisdiction over the spouse's military pension *at any time*. Instead, we read *Steel* as stating that, so long as a court of competent jurisdiction has acquired personal jurisdiction over the party who is a military serviceperson either by residency, domicile or consent, the Act grants that court the power to distribute the military pension. We believe that this interpretation of *Steel* is most consistent with the statutory language, Congressional purpose and goals of the Act.

¶ 21 In summation, we find that subsection 1408(c)(4)(C) of the Act is a provision of personal jurisdiction that permits state courts to equitably distribute military pensions in a divorce proceeding so long as the serviceperson has consented to the

personal jurisdiction of the court. As we have explained, consent is determined solely by looking to the provisions of the Act. Consequently, since we hold that Husband consented to the jurisdiction of Pennsylvania courts by not objecting to *in personam* jurisdiction until four days prior to the bifurcation hearing while, at the same time, regularly participating in the Butler County divorce proceedings, the trial court erred in concluding that it did not have jurisdiction to equitably distribute Husband's military pension.

¶ 22 Order reversed. Remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

¶ 23 TAMILIA, J., files a Dissenting Opinion.

TAMILIA, J., dissenting:

¶ 1 I respectfully dissent. I believe the congressional legislation enacted following *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), in the nature of the Uniformed Services Former Spouses' Protection Act (Act), 10 U.S.C. § 1408, related to subject matter jurisdiction. Such objection to jurisdiction may be raised at any time. Application of section 1408(c)(4), dealing with means of acquiring jurisdiction, requires that the court have jurisdiction by reason of the service person's residence (other than military service), his domicile in the territorial jurisdiction of the court or his consent to the jurisdiction of the court. The majority would find this creates personal jurisdiction by reason of the husband's acceptance of service and appearing through counsel in preliminary motions relating to the divorce proceeding. Such appearance for purpose of divorce proceedings has long been acceptable for purposes of dissolution of the marriage. Where the party appears through counsel and participates in the action through trial to final judgment, he cannot thereafter contest the jurisdiction of the court as to the matters litigated therein. *Sherrer v. Sherrer*, 334 U.S. 343,

68 S.Ct. 1087, 92 L.Ed. 1429 (1948). The participation is sufficient to confer subject matter jurisdiction over property, custody or quasi-in rem proceedings. *Perrin v. Perrin*, 408 F.2d 107 (3d Cir.1969). Such is not the case here.

¶2  I believe passage of the Act created subject matter jurisdiction in the state courts, formerly precluded by federal law, and the consent to the jurisdiction of a state court in which the serviceman is neither domiciled or a resident must be unequivocally directed to equitable distribution of the pension. Jurisdiction may not be acquired by means of acceptance of service by counsel or consent to the dissolution of the marriage.

¶3  Despite the written acceptance of service by counsel, however, this is insufficient to establish jurisdiction over out of state property, custody or quasi-in-rem matters. Where neither of the parties were domiciliaries of the jurisdiction during the marriage and the acquisition of the pension, unless the court had personal jurisdiction over the party whose property rights were to be effected, the court may not dispose of those rights. Despite the acceptance of service by the non-resident husband through counsel, the timely preliminary objection to disposition of the pension through equitable jurisdiction at the time of the bifurcation hearing was effective in denying the court jurisdiction over the pension rights.

¶4  I agree with the trial court in his grant of the preliminary objection to jurisdiction of the court over equitable distribution of the pension and would therefore affirm that Order.