**Helen T. STEEL (Muff),
Plaintiff-Appellant,**

v.

**UNITED STATES of America and Dean E. Steel, Defendants-Appellees.**

No. 86–5638.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1987.

Decided April 7, 1987.

Kim W. Cheatum, San Diego, Cal., for plaintiff-appellant.

Michael E. Quinton and Steven A. Micheli, San Diego, Cal., for defendants-appellees.

Before FERGUSON, BOOCHEVER and WIGGINS, Circuit Judges.

FERGUSON, Circuit Judge:

Plaintiff-Appellant Helen T. Steel (Muff) seeks to establish the validity of a divorce judgment she obtained in California in 1978 over another judgment obtained by her former husband, Defendant-Appellee Dean Steel, in Virginia. If the validity of her judgment is established through a declaratory action, Helen seeks to require the Secretary of the Air Force to honor the California court's division of Dean's Air Force retirement benefits and to pay her share to her directly under the provisions of the Federal Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 [hereinafter FUSFSPA]. The district court dismissed Helen's complaint. It found that Dean did not have sufficient minimum contacts at the time of the filing of the complaint to allow personal jurisdiction, and that the United States has not waived sovereign immunity via FUSFSPA. We affirm the district court as to the dismissal of the United States but find, however, that measured properly, Dean had sufficient

contacts with the State of California to allow personal jurisdiction.

## I.

Helen T. Steel (Muff) and Dean Steel met in San Diego, California, in 1956, and were married in Las Vegas, Nevada.[1] Their first child was born in San Diego on February 2, 1961. Their second child was born in Sacramento, California, on December 7, 1962. Dean had entered active duty with the Air Force in June 1961, and received a number of different assignments until 1972, when he was stationed in Italy.

In 1976, Dean received orders that would return him to a post at Victorville, California. In preparation for the family's return, Helen and the family returned to San Diego in June. Dean remained in Italy to complete his tour of duty, which extended through August. Dean and Helen purchased a house in the San Diego area, and they expected that Dean would commute from Victorville on weekends to be with his family. Dean also purchased an automobile for Helen's use, registering it in California in his name.

Helen's expectations were disturbed, however, by a change in Dean's assignment from Victorville to Washington, D.C. Dean returned to California for the month of August, and he and Helen determined that he would go to Washington while the family remained behind in San Diego. The change in assignment was at Dean's request. Dean moved from California to Washington in September 1976. Dean believes that he legally separated from Helen at that time, while Helen contends they separated on January 15, 1977, a time of "marital difficulties."

On January 20, 1978, a Virginia court entered a "Final Decree of Divorce," purporting to order that "the marital rights of each party to this suit in and to any property owned by the other be and the same are hereby extinguished." On December 21, 1977, Helen had filed a proceeding for divorce in the California Superior Court, and

that court entered an Interlocutory Judgment of Divorce on May 23, 1978. That court found that Dean's anticipated service retirement benefits were community property under the laws of California, and awarded Helen an interest in those benefits in an amount to be determined upon Dean's retirement.

On May 9, 1978, however, Dean moved to quash the California proceedings on the grounds that he was not amenable to the service of process by California courts. On July 13, 1978, the California court denied the motion, and Dean did not appeal that decision.

In 1984, Dean retired, and Helen obtained an implementing order from the California court awarding her interest in his benefits. Helen served a copy of this judgment upon the Secretary of the Air Force under the Federal Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, in order to receive direct payment of the amounts due her. Dean contested the award, serving the Secretary with a copy of the divorce judgment he had obtained in Virginia. The Secretary, faced with two conflicting decrees, turned to the procedure specified by FUSFSPA and withheld the amount in controversy from both parties pending a determination of the validity of the two decrees.

On June 17, 1985, Helen filed suit in the Southern District of California. Helen brought suit against Dean and the United States in an effort to secure her rights under FUSFSPA. She sought declaratory relief under 28 U.S.C. § 2201 to establish the priority of the California state court judgment of divorce and division of marital property over the Virginia judgment. She alleged subject-matter jurisdiction based upon diversity of citizenship and FUSFSPA, although the complaint failed to allege any amount in controversy. The record reveals, however, that the value of the share of Dean's past and future pension payments claimed by Helen exceeds $10,-

---

**1.** The facts are taken from the parties' affidavits below. There are few conflicts between their

assertions.

000. *See Aetna Casualty & Sur. Co. v. Flowers,* 330 U.S. 464, 467–68, 67 S.Ct. 798, 799–800, 91 L.Ed. 1024 (1947); *see also Canadian Indem. Co. v. Republic Indem. Co.,* 222 F.2d 601, 603 (9th Cir.1955). The government answered, suggesting that Helen failed to state a claim against it, and that its actions were substantially justified. It also moved for interpleader to bring Dean into the action. Dean moved to dismiss for lack of personal jurisdiction. The government then moved to dismiss for lack of subject-matter jurisdiction and on the basis of sovereign immunity. The district court ruled in favor of both defendants and dismissed the action in an unpublished order entered January 6, 1986. Although the order was not accompanied by findings of facts and conclusions of law, the court stated that it granted Dean's motion because "minimum contacts here are insufficient," for the instant proceedings was "not simply … an enforcement of a decree, but a new dispute." The district court later reaffirmed that it was examining minimum contacts as they existed at the time of the complaint. The district court also dismissed the action against the government on sovereign immunity grounds.

## II.

 In most cases, when a trial court has dismissed for lack of personal jurisdiction without holding an evidentiary hearing, we review the materials presented (in this case, affidavits) de novo to determine whether the plaintiff has made a prima facie showing of personal jurisdiction over the defendant. *Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir.1986); *Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir.1986). All factual disputes presented by the affidavits are resolved in favor of the plaintiff. *See Pacific Atl. Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1327 (9th Cir.1985). In this case, however, the parties disagree on only two jurisdictional facts that could not affect the result here: whether Dean was registered to vote in California and when the separation occurred. We review the dismissal of the government on the basis of sovereign immunity de novo. *See*

*United States v. Yakima Tribal Court of the Yakima Indian Nation,* 806 F.2d 853, 857 (9th Cir.1986).

## III.

 The district court did not determine whether it had subject-matter jurisdiction over Helen's complaint, except insofar as it dismissed the United States as barred by sovereign immunity. This court must address the question, however, for if we lack subject-matter jurisdiction it is unnecessary to determine whether Dean's contacts with California were sufficient to confer personal jurisdiction. We conclude that the district court had subject-matter jurisdiction based on diversity of citizenship. Helen contends that the court also had jurisdiction under FUSFSPA. Congress enacted that law to reverse the Supreme Court's decision in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). *See* H.R.Conf.Rep. No. 749, 97th Cong., 2d Sess. 165 (1982), *reprinted in* 1982 U.S. Code Cong. & Admin.News 1555, 1569, 1570; S.Rep. No. 502, 97th Cong. 2d Sess. 1 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 1596, 1596. The Court held in *McCarty* that federal law preempted a spouse's community property interest in federal retirement benefits. *See* 453 U.S. at 235, 101 S.Ct. at 2742. Subsection 1408(c)(1) of Title 10 specifically overrides the decision in *McCarty* and authorizes courts to treat retirement benefits as community or separate property in accord with the law of the applicable state.

 FUSFSPA, however, was not intended to expand the subject-matter jurisdiction of federal courts; it merely empowered a court that otherwise had jurisdiction to divide marital property. In defining "court" for the purposes of the statute, section 1408(a)(1) incorporates the requirement of "competent jurisdiction." FUSFSPA does not create jurisdiction, but grants power to courts once they have jurisdiction. Thus, no federal question jurisdiction lies, and diversity jurisdiction can be the only basis for subject-matter jurisdiction here.

Because the case is brought under diversity, the court must apply the standards of due process applicable to state assertion of jurisdiction. *See Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161, 167 (9th Cir.1975).[2]

We must apply California's long-arm statute to determine if jurisdiction may be had over Dean. The first issue is the timing of minimum contacts. The district court examined Dean's contacts with California at the time of the suit. At the hearing, the judge stated:

> THE COURT: I think the minimum contacts here are insufficient based on the evidence that's been presented to this Court though affidavits under this point. This is not simply a—an enforcement of a decree, but a new dispute in which this Court is asked to take personal jurisdiction over the defendant husband....
>
> . . . .
>
> [PLAINTIFF'S COUNSEL]: I just want to make certain from Your Honor's ruling whether the ruling, as to personal jurisdiction, you were looking at the facts that existed when this particular Complaint was filed.
>
> THE COURT: Yes, I think that is the basis of this Court's ruling.

The court thus ruled that the declaratory judgment action constituted a "new dispute" for which the timing of minimum contacts was later than the divorce proceedings that led to conflicting judgments.

■ Mindful that the Due Process Clause "require[s] that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring)), courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction. When a court is exercising specific jurisdiction over a defendant, "arising out of or related to the defendant's contacts with the forum," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984), the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred. In the declaratory judgment suit at hand, the minimum contacts that might give Dean fair warning of suit arise not out of Helen's filing of a declaratory judgment action, but out of the marriage and separation that led to the conflicting divorce judgments.

■ Dean thus presents the seeming anomaly of a resident of one state (Virginia) for the purposes of diversity jurisdiction who is amenable to suit in another state (California) due to his former residence and contacts there. Yet, as a matter of statutory requirement, the determinations of citizenship and, accordingly, diversity are made at the time of suit. *Mann v. City of Tucson Dep't of Police*, 782 F.2d 790, 794 (9th Cir.1986) (per curiam). As a matter of due process, the determination of amenability to suit takes place at the time of the relevant contacts. One may create diversity jurisdiction by a move to a different state, but one cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place. *See Arizona Barite Co. v. Western-Knapp Eng'g Co.*, 170 F.2d 684 (9th Cir.1948) (cessation of business in state does not insulate corporation from jurisdiction for acts committed while doing business). Thus, the

---

**2.** Since there is no federal question jurisdiction here, we have no occasion to determine whether the limits of the Due Process clause of the Fifth Amendment differ from those of the Due Process clause of the Fourteenth Amendment, a question expressly reserved by the Supreme Court. *See Asahi Metal Indus. Co. v. Superior Court,* — U.S. —, —, n. *, 107 S.Ct. 1026, 1033 n. *, 94 L.Ed.2d 92 (1987); *see also Point*

*Landing, Inc., v. Omni Capital Int'l, Ltd.,* 795 F.2d 415, 422–27 (5th Cir.1986) (en banc and per curiam) *cert. granted, sub nom., Omni Capitol Int'l v. Rudolf Wolft & Co., Ltd.,* — U.S. —, 107 S.Ct. 946, 93 L.Ed.2d 995 (1987). The Ninth Circuit, without expressly addressing the issue, treated the analyses as identical. *See Pacific Atl.,* 758 F.2d at 1327.

fair warning given Dean by his contacts with California does not expire simply because of his lack of later contacts with the state.

This conclusion is supported by the test for personal jurisdiction expounded by this court in *Data Disc, Inc., v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977).

> In our circuit, we use the following approach in making this evaluation [of specific jurisdiction]: (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

The second prong of the *Data Disc* test separates the claim upon which jurisdiction is evaluated from the purposeful availment that initiated those claims. Dean's contacts with California during the marriage, separation, and divorce proceedings determine whether the district court has personal jurisdiction over him in the declaratory judgment action.

A recent Ninth Circuit case further supports this analysis. In *Thompson v. Thompson*, 798 F.2d 1547 (9th Cir.1986), *cert. granted*, —— U.S. ——, 107 S.Ct. 946, 93 L.Ed.2d 996 (1987), the court found personal jurisdiction in a proceeding that was "directly related" to an earlier state court action for which there was personal jurisdiction. *Id.* at 1549. The defendant's contacts with the state were evidenced by her filing of divorce and child custody proceedings. There was personal jurisdiction in the later proceeding against her under the Parental Kidnapping Protection Act because that action "is directly related to [defendant's] original California custody action." *Id.* While the contacts present in *Thompson*

were stronger, the causal link is identical to the case at hand.

Applying the test from *Data Disc* to the facts alleged by the parties in their affidavits, we find that the district court had jurisdiction over Dean. The operative facts concerning this conflict of judgments arise out of the Steel's marriage, subsequent separation, and their suits for divorce. Thus, the same facts that the California court examined in asserting jurisdiction over Dean in the 1978 divorce proceeding are the facts that confer personal jurisdiction here.

■ Helen wishes to avoid a new determination of jurisdiction by asking this court to find the California court's determination of jurisdiction in the divorce proceeding res judicata for this suit. Collateral estoppel or issue preclusion, however, is limited to cases where the legal and factual situations are identical. *See Starker v. United States*, 602 F.2d 1341, 1344–45 (9th Cir.1979) (adopting the test of the *Restatement (Second) of Judgments* ). Here, the legal issue of amenability to suit to determine the *validity* of the competing divorce judgments is different from the California court's determination of jurisdiction in the divorce proceeding itself. The facts governing jurisdiction in the present case may arise out of the same events, but the California decision on the issue cannot be preclusive on the court's decision here.

■ Dean's contacts with the forum, however, are sufficient to satisfy due process without granting collateral estoppel effect to the California proceedings. Under the first prong in *Data Disc*, Dean has "purposefully avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." 557 F.2d at 1287. Dean and Helen were originally domiciled in California. Helen gave birth to two of their children in the state. They continued to use a California address during their sojourns with the Air Force, and used a San Diego address for a tax return as late as 1977. Although Dean asserts that he im-

mediately quitclaimed his interest to Helen, he purchased a home with her in joint tenancy upon their return from Italy in 1976. As of the time of Helen's divorce action, he remained a cosigner on the loan for that property. He also purchased an automobile for her use, which was registered in his name in California, although he paid nonresident fees to register it. By his own admission, Dean had an intent to domicile in the state of California with his family upon their return from Italy, for it was only "upon their return" that he requested his transfer to Washington. The purposeful availment prong of *Data Disc* is fully satisfied.

Next, the claim must be one that arises out of or results from the defendant's forum-related activities. As noted in another conflict of judgments case, "there are few areas of the law in black and white. The greys are dominant and even among them the shades are innumerable." *Estin v. Estin*, 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, ·92 L.Ed. 1561 (1948). Unlike tort or contract cases, divorce and division of marital property will not always yield to a simple determination of what arises out of or results from forum-related activities. The shades here are fine indeed. Nevertheless, the problem regarding the division of the Steel's marital property is intimately bound up with Dean's contacts with California: his domicile there early in the marriage before moving with the Air Force, his return there from Italy, and his separation from his wife and children there. Dean contested the California court's jurisdiction over him in Helen's divorce action and lost. He did not appeal that determination. For the purposes of personal jurisdiction in a dispute over marital property, Dean's contacts are sufficiently related to the resulting conflict of judgments to support jurisdiction.

The final *Data Disc* requirement is reasonableness. *See also Haisten v. Grass Valley Medical Reimbursement Fund, Ltd,* 784 F.2d 1392, 1397 (9th Cir.1986) ("Moreover, jurisdiction may be exercised with a *lesser showing of minimum contact* than would otherwise be required if considerations of reasonableness dictate."(emphasis in original)). A comparison with *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), is revealing in this regard. In *Kulko,* the Court held that California could not assert personal jurisdiction over the defendant-husband in a case involving child support payments where the couple were domiciliaries of New York during marriage, and where the husband had little or no contacts with California. That the marriage originally occurred in California and that the husband had allowed his children to reside in California with their mother were not sufficient to allow jurisdiction. *Id.* at 93, 98 S.Ct. at 1697. The Court concluded its examination of the husband's contacts by noting that

> basic considerations of fairness point decisively in favor of appellant's [husband's] State of domicile as the proper forum for adjudication of this case, whatever the merits of appellee's underlying claim. It is appellant who has remained in the State of marital domicile, whereas it is appellee who has moved across the continent. Appellant has at all times resided in New York State, and, until the separation and appellee's move to California, his entire family resided there as well.... To make jurisdiction in a case such as this turn on whether appellant bought his daughter her ticket [to fly to California] or instead unsuccessfully sought to prevent her departure would impose an unreasonable burden on family relations, and one wholly unjustified by the "quality and nature" of appellant's activities in or relating to the State of California.

*Id.* at 97–98, 98 S.Ct. at 1699–1700 (citations omitted).

The contrast in reasonableness could hardly be greater. Although the Steels traveled with the Air Force around the world, they apparently considered California their "home." Dean had numerous

contacts with California related to his marriage. He moved his family back to the state after their stay in Italy. All of the family's ties and property are within California. Further, Dean's attempt to resolve the dispute in Virginia, a state that had no contacts with any aspect of the marriage other than him, should have led him to understand that the final resolution would lie elsewhere. Resolution in California of the conflict of judgments is reasonable given the state's contacts with the marriage in question.

■ Dean contends that the court should apply the more restrictive standard of the "personal jurisdiction provision" of FUSFSPA, 10 U.S.C. § 1408(c)(1). A careful reading reveals that this provision is a limitation on subject-matter rather than personal jurisdiction. A court otherwise having jurisdiction of the parties is not allowed to invoke the powers of FUSFSPA unless personal jurisdiction has been acquired by domicile or consent or residence other than by military assignment. This provision is clearly inapplicable to the case at hand. Helen seeks not to invoke the powers of the district court to "treat disposable retired or retainer pay," but instead to decide the validity of two judgments, which conflict as to the distribution of retirement benefits.[3] The requirements applicable to a division of retirement benefits today are inapplicable to a decision regarding the validity of two previous determinations.

■ The United States seeks to interpose another obstacle to federal jurisdiction: the domestic relations exception to diversity jurisdiction. The domestic relations exception *requires* district courts to decline cases involving pure determinations of domestic status: marriage, divorce, annulment, and paternity. *Csibi v. Fustos*, 670 F.2d 134, 137–38 (9th Cir.1982). It also *allows* courts to abstain from cases where status determinations are involved tangentially. 670 F.2d at 137. Under this doctrine of permissive abstention, some federal courts have declined controversies involving the enforcement or invalidation of divorce decrees from state courts. *Id.*[4] In similar situations, however, the Ninth Circuit has recognized that "a suit attacking a state court judgment as void for want of subject-matter jurisdiction lies within the federal province, if the other requisites for federal jurisdiction are present. Jurisdiction thus grounded is not lost simply because the judgment attacked is a divorce decree." *Rapoport v. Rapoport*, 416 F.2d 41, 43 (9th Cir.1969) (citations omitted), *cert. denied*, 397 U.S. 915, 90 S.Ct. 920, 25 L.Ed.2d 96 (1970).

## IV

■ The district court ruled that FUSFSPA does not waive the sovereign immunity of the United States. We affirm the district court on this count.

The United States moves this court to transfer this appeal to the Federal Circuit pursuant to 28 U.S.C. § 1295(a)(2), arguing that Helen's action could have been brought in the district court under 28 U.S.C. § 1346(a)(2). We need not address the government's motion, however, for we determine that sovereign immunity bars subject-matter jurisdiction over the claim against the government, and therefore affirm the district court's dismissal of it.

Waivers of sovereign immunity "cannot be implied, but must be unequivocally expressed." *Gilbert v. DaGrossa*, 756 F.2d

---

3. Moreover, this circuit has held that the jurisdictional requirements of FUSFSPA concerning the division of benefits are inapplicable to judgments rendered prior to its effective date. *See Whittington v. Whittington*, 733 F.2d 620, 621 (9th Cir.1984).

4. Two commentators recently suggested that the domestic relations exception should be narrowly construed. *See* Atwood, *Domestic Relations Cases in Federal Court: Toward a Principled Exercise of Jurisdiction*, 35 Hastings L.J. 571, 627–28 (1984) (arguing for an abolition of the doctrine replaced with conventional abstention analysis); Rush, *Domestic Relations Law: Federal Jurisdiction and State Sovereignty in Perspective*, 60 Notre Dame L.Rev. 1, 30 (1984) (exception should be narrowly defined).

1455, 1458 (9th Cir.1985) (citing *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)). FUSFSPA does waive the sovereign immunity of the United States to allow service upon the appropriate Secretary of a court order dividing retirement benefits. 10 U.S.C. § 1408(d)(1), (b)(1). This waiver does not extend, however, to immunity from suit. Helen seeks to compel the Secretary to enforce the judgment from the only court she contends had subject-matter jurisdiction over the retirement benefits and personal jurisdiction over her. FUSFSPA does not allow her to do so.[5]

## CONCLUSION

Dean Steel is amenable to suit in California to resolve this conflict between divorce judgments. His contacts with California that arose out of his marriage are sufficient to support personal jurisdiction. This district court was correct in holding that sovereign immunity bars Helen Steel's suit against the Secretary.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Helen is awarded costs against Dean and the United States is awarded costs against Helen.

---

**5.** So long as a court of competent jurisdiction (with both personal jurisdiction and subject-matter jurisdiction) compels the spouses to sign the agreement contemplated by FUSFSPA, 10 U.S.C. § 1408(e)(3)(B), the Secretary will be required to heed the judgment. There is some indication on the record that the Air Force in this case demanded judgment from a federal

district court before funds would be disbursed. Federal jurisdiction, of course, is no panacea in these matters, and the judgment of a state court with jurisdiction over both spouses is as valid as that of a federal court. This is all the more true where jurisdiction is invoked under diversity of citizenship, and we sit in effect as a state court.