FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AXIOM FOODS, INC., a California
corporation; GROWING NATURALS,
LLC, an Arizona limited liability
company,
                    *Plaintiffs-Appellants*,

v.

ACERCHEM INTERNATIONAL, INC., an
entity of unknown origin,
                    *Defendant*,

and

ACERCHEM UK LIMITED, a United
Kingdom limited company,
                    *Defendant-Appellee.*

No. 15-56450

D.C. No.
2:15-cv-00870-
PA-AJW

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted April 3, 2017
Pasadena, California

Filed November 1, 2017

Before:  DAVID M. EBEL,[*] MILAN D. SMITH, JR., and
N. RANDY SMITH, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[**]

### Personal Jurisdiction

The panel affirmed the dismissal of a copyright infringement action for lack of personal jurisdiction over a defendant United Kingdom limited company.

Applying the "effects" test, the panel concluded that the nonresident defendant committed an intentional act by adding plaintiffs' logos to a newsletter and sending it to a list of recipients.  The defendant did not, however, expressly aim its intentional act at the forum state of California.  Following *Walden v. Fiore*, 134 S. Ct. 1115 (2014), the panel held that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction.

The panel held that Federal Rule of Civil Procedure 4(k)(2) did not permit the district court to exercise personal jurisdiction over the United Kingdom company.  The panel concluded that such an exercise of jurisdiction would not

---

[*] The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

comport with due process because there were insufficient contacts between the defendant and the United States.

## COUNSEL

Jim D. Bauch (argued) and Daniel C. Lapidus, Lapidus & Lapidus PLC, Beverly Hills, California, for Plaintiffs-Appellants.

Henry L. Self III (argued) and Brian G. Wolf, Lavely & Singer P.C., Los Angeles, California, for Defendant-Appellee.

## OPINION

M. SMITH, Circuit Judge:

Axiom Foods, Inc. and Growing Naturals, LLC (collectively, Appellants) appeal from the district court's dismissal of their copyright infringement action against Acerchem UK Limited for lack of personal jurisdiction. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant Axiom Foods, Inc. (Axiom) is a California corporation that supplies organic and chemical-free products made from whole-grain brown rice, peas, and other "superfoods," to the food, beverage, and nutraceutical industries. Appellant Growing Naturals, LLC (GN) is an Arizona limited liability company that develops and sells natural food products, such as plant-based proteins and rice milk powders. GN partners with Axiom to produce and sell

goods containing Axiom's products. Appellants do business in California.

Acerchem International, Inc. (Acerchem International), which is based in Shanghai, China, is a wholesale manufacturer of health and nutritional products, including rice protein. Appellee Acerchem UK Limited (Acerchem UK), a United Kingdom limited company, is a wholly-owned subsidiary of Acerchem International. Acerchem UK maintains its principal place of business in the United Kingdom, and does not conduct business in the United States.

On November 20, 2014, Elva Li, an employee of Acerchem UK, sent a newsletter promoting Acerchem UK's rice protein products to 343 email addresses. Appellants' "As Good as Whey" and "Non-GMO" logos were used in the newsletter. Most of the newsletter's recipients were located in Western Europe. No more than ten recipients were located in California.

Appellants subsequently registered their copyrights for the "As Good As Whey" and "Non-GMO" logos with the United States Copyright Office. After the registrations became effective, Appellants filed a complaint against Acerchem International and Acerchem UK in the Central District of California, on February 6, 2015.[1] The complaint asserted two claims for copyright infringement pursuant to 17 U.S.C. § 501 based on Acerchem UK's use of Appellants' logos in its November 20, 2014 newsletter.

Acerchem UK filed a motion to dismiss the complaint for lack of personal jurisdiction and failure to state a claim.

---

[1] Appellants never served Acerchem International.

The district court ordered jurisdictional discovery and granted the parties leave to file supplemental briefing.

On September 11, 2015, the district court granted Acerchem UK's motion to dismiss for lack of personal jurisdiction.[2] The district court declined to rule on Acerchem UK's motion to dismiss for failure to state a claim. Appellants timely appealed.

## STANDARD OF REVIEW

We review *de novo* "[a] district court's determination of whether personal jurisdiction may be properly exercised." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 671 (9th Cir. 2012).

## ANALYSIS

### I.  Specific Jurisdiction

### A.  General Principles

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). California authorizes its courts to exercise jurisdiction "to the full extent that such exercise comports with due process." *Id.* (citing Cal. Civ. Proc. Code § 410.10). Accordingly, "the jurisdictional analyses under [California] state law and federal due process are the same." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

---

[2] Axiom and GN conceded that the district court lacked general jurisdiction over Acerchem UK. They do not argue otherwise on appeal.

Due process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). A nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted). Specifically, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* Our "primary concern" is "the burden on the defendant." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Two principles animate the "defendant-focused" inquiry. *Walden*, 134 S. Ct. at 1122. First, the relationship between the nonresident defendant, the forum, and the litigation "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Second, the minimum contacts analysis examines "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* It follows that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123.

These principles apply to cases involving intentional torts. *Id.* "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* While "a single act can support jurisdiction," the act must first "create[] a 'substantial connection' with the forum." *Burger King*, 471 U.S. at 475 n.18 (citation omitted). Put differently, "'some single or occasional acts' related to the forum may not be sufficient to establish jurisdiction if 'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 318). A defendant's "'random, fortuitous, or attenuated' contacts" will not suffice. *Walden*, 134 S. Ct. at 1123 (quoting *Burger King*, 471 U.S. at 475).

There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476–78)).

Where, as here, a case sounds in tort, we employ the purposeful direction test. *See id.* The test, often referred to as the "effects" test, derives from *Calder v. Jones*, 465 U.S. 783 (1984). *Washington Shoe*, 704 F.3d at 673. The defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Mavrix Photo*, 647 F.3d at 1228).

Under the first prong of this test, Appellants must show that Acerchem UK committed an intentional act. *Schwarzenegger*, 374 F.3d at 806. Li added Appellants' logos to the newsletter and sent it to a list of recipients. This was unquestionably an intentional act, so the first prong of the test is satisfied.

Appellants must next demonstrate that Acerchem UK "expressly aimed" its intentional act at the forum. *Id.* Before we address the second prong of the test, we must consider the impact of *Walden* on the test to be employed.

### B. The Impact of *Walden*

We have held that "individualized targeting" satisfies the express aiming requirement. *See Washington Shoe*, 704 F.3d at 678–79; *see also Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1130 (9th Cir. 2010). A theory of individualized targeting alleges that a defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Washington Shoe*, 704 F.3d at 675 (quoting *Dole Food Co.*, 303 F.3d at 1111). In the context of copyright infringement, we have held that a defendant's "alleged willful infringement of [a plaintiff's] copyright, and its knowledge of both the existence of the copyright and the forum of the

copyright holder," established "individualized targeting." *Id.* at 678–79.

Appellants claim that they have satisfied the express aiming requirement. They rely on the strength of their own forum connections, coupled with evidence suggesting Acerchem UK knew of those connections and Appellants' ownership of the logos' copyrights.[3] *Walden* requires more. In *Walden*, the Supreme Court rejected our conclusion that the defendants' "knowledge of [the plaintiffs'] 'strong forum connections,'" plus the "foreseeable harm" the plaintiffs suffered in the forum, comprised sufficient minimum contacts. 134 S. Ct. at 1124–25 (citation omitted). The

---

[3] The parties dispute whether Acerchem UK knew that Appellants own the copyrights to the two logos. In her declaration, Li acknowledged authorship of the allegedly infringing newsletter. Li explained that she found the logos by entering terms such as "rice protein" into a search engine, but could not recall from which websites the logos originated. Li denied intent to infringe, maintaining that she believed the copyrights were in the public domain.

On the other hand, Kay Abadee, the Vice President of Axiom and GN, attested that Appellants are well-known in the industry, and that their websites are among the first online search results for terms like "rice protein."

The district court reviewed the parties' affidavits and concluded that it was "plausible" that Li did not know Appellants owned the logos. The district court, which did not hold an evidentiary hearing, should have resolved the factual conflict in Appellants' favor. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Nonetheless, the district court's error was not dispositive. As we explain above, Acerchem UK lacked sufficient minimum contacts with California to comply with the requirements of due process, which renders this aspect of the case moot.

Court found that our approach "impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 1125. The Court made clear that we must look to the defendant's "own contacts" with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum. *Id.* at 1124–25.

In light of the Court's instructions in *Walden*, mere satisfaction of the test outlined in *Washington Shoe*, without more, is insufficient to comply with due process.[4] Following *Walden*, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires. *Cf. Picot v. Weston*, 780 F.3d 1206, 1214–15 (9th Cir. 2015) (applying *Walden* to express aiming prong of purposeful direction test).

## C.  Application of the Principles of *Walden*

We now turn to Appellants' evidence of Acerchem UK's contacts with California, and conclude that Acerchem UK's "suit-related conduct" did not "create a substantial connection with [California]." *Walden*, 134 S. Ct. at 1121.

Appellants' counsel reviewed the list of 343 email addresses that received Acerchem UK's newsletter. Counsel's affidavit stated that the list included "[a]t least 55 recipients with companies in California, including

---

[4] The Supreme Court rejected a similar rule proposed by the respondents in *Walden*: "[A] defendant creates sufficient minimum contacts with a forum when he (1) intentionally targets (2) a known resident of the forum (3) for imposition of an injury (4) to be suffered by the plaintiff while she is residing in the forum state." 134 S. Ct. at 1124 n.8.

14 recipients with locations within Los Angeles County." As required, we focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122. By that standard, Appellants' evidence sheds no light on whether Acerchem UK created minimum contacts with California. We lack information concerning the residence of the 55 recipients and the legal and operational relationships among the 55 recipients and their respective companies. Moreover, any California contacts Acerchem UK created by sending a single newsletter to 55 recipients of unknown residence are too "attenuated," *id.* at 1123 (citation omitted), and "isolated," *Keeton*, 465 U.S. at 774, to support the exercise of jurisdiction.

Nor does the fact that 144 email addresses belong to Appellants' "actual or potential partners, customers, or suppliers" compel a different result. The foreseeability of injury in a forum "is not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen*, 444 U.S. at 295); *see also Washington Shoe*, 704 F.3d at 675 ("*Calder* 'cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction.'" (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000))).

Acerchem UK's evidence confirms the insufficiency of its contacts with California. No more than ten of the newsletter's recipients were physically located in California. Indeed, most of the recipients were located in Western Europe. Acerchem UK itself conducts no business in California. It can hardly be said that "California [wa]s the focal point both of the [newsletter] and of the harm suffered." *Walden*, 134 S. Ct. at 1123 (first alteration in

original) (quoting *Calder*, 465 U.S. at 789); *see also Keeton*, 465 U.S. at 773–74 (holding that "regular circulation of magazines in the forum State is sufficient to support an assertion of jurisdiction in a libel action," as "regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous"); *Mavrix Photo*, 647 F.3d at 1229–31 (finding sufficient minimum contacts where defendant used plaintiff's copyrighted photos on its celebrity gossip website "as part of its exploitation of the California market for its own commercial gain").

*Calder* is instructive to show how different the facts are in this case. In *Calder*, a California actress brought a libel action against two nonresident defendants in California state court, based on an article defendants wrote for the National Enquirer. *See* 465 U.S. at 784–86. The Supreme Court found the defendants' "forum contacts to be ample." *Walden*, 134 S. Ct. at 1123 (citing *Calder*, 465 U.S. at 788–89). The defendants contacted "California sources" for information and wrote about the actress's activities in California. *Id.* Roughly 600,000 copies of the article were sold in California, where the actress suffered the "brunt" of the reputational injury. *Id.* In short, "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Id.* at 1123–24. In this case, Acerchem UK sent one newsletter to a maximum of ten recipients located in California, in a market where Acerchem UK has no sales or clients. The alleged infringement barely connected Acerchem UK to California residents, much less to California itself.

Finally, we will not impute Acerchem International's forum contacts to Acerchem UK. "It is well established that,

as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other[.]" *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007). Appellants have provided no reason to deviate from this general rule.[5]

The district court correctly found that it lacked specific jurisdiction over Acerchem UK.[6]

## II. Rule 4(k)(2) Jurisdiction

In the alternative, Appellants contend that the district court may exercise personal jurisdiction over Acerchem UK pursuant to Federal Rule of Civil Procedure 4(k)(2).

Rule 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction,"

---

[5] Assuming, without deciding, that an agency relationship between Acerchem International and Acerchem UK would be "relevant to the existence of *specific* jurisdiction," *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014), Appellants have not made a prima facie case for an agency relationship between Acerchem International and Acerchem UK, *see Williams*, 851 F.3d at 1024–25 ("[U]nder any standard for finding an agency relationship, the parent company must have the right to substantially control its subsidiary's activities."). Nor have they spelled out an alter ego theory of liability allowing us to attribute the activities of the parent entity to the subsidiary. *See id.* at 1021 ("[A] plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." (citation omitted)).

[6] Having decided that Appellants do not meet their burden with respect to the second prong of the purposeful direction test, we need not address the last prong. *See Picot*, 780 F.3d at 1215 n.4.

and "exercising jurisdiction is consistent with the United States Constitution and laws." Rule 4(k)(2) imposes three requirements:

> First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006) (citations omitted). "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Holland Am. Line*, 485 F.3d at 462.

Appellants do not satisfy the third requirement. According to the evidence produced, the sole contact between Acerchem UK and the United States is the newsletter. Although Appellants maintain that Acerchem UK sent the newsletter to "[a]t least 70 recipients with companies in the United States, other than California," Appellants fail to explain the relationship between the 70 recipients and their respective companies. At best, "[t]he contacts between [Acerchem UK] and the United States can only be described as scant, fleeting, and attenuated." *Id.*

The district court properly declined to exercise jurisdiction over Acerchem UK pursuant to Rule 4(k)(2).

**CONCLUSION**

For the foregoing reasons, we affirm the district court's dismissal of Appellants' complaint pursuant to Rule 12(b)(2).

Appellants shall bear costs on appeal.  Fed. R. App. P. 39(a)(2).

AFFIRMED.