NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 11 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DELPHIX CORP., | No. 16-16572 |
| Plaintiff-Appellant, | D.C. No. 5:16-cv-00606-BLF |
| v. | |
| EMBARCADERO TECHNOLOGIES, INC., | MEMORANDUM* |
| Defendant-Appellee. | |

| | |
|---|---|
| DELPHIX CORP., | No. 16-16697 |
| Plaintiff-Appellee, | D.C. No. 5:16-cv-00606-BLF |
| v. | |
| EMBARCADERO TECHNOLOGIES, INC., | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted December 6, 2017
San Francisco, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: RAWLINSON and OWENS, Circuit Judges, and RICE,** Chief District Judge.

Delphix appeals the district court's order dismissing the case for lack of personal jurisdiction. Embarcadero cross-appeals the district court's order finding the court had subject matter jurisdiction. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's factual findings for clear error and the issue of jurisdiction de novo. *Reebok Int'l, Ltd. v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995). We affirm in part and reverse in part.

"Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation and internal quotation marks omitted). While "a plaintiff may not simply rest on the bare allegations of the complaint," "uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (citation, internal quotation marks, and brackets omitted).

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128–29

---

** The Honorable Thomas O. Rice, Chief United States District Judge for the Eastern District of Washington, sitting by designation.

(9th Cir. 2003). However, the plaintiff must make "only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). For purposes of deciding whether a prima facie showing has been made, "the court resolves all disputed facts in favor of the plaintiff." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013), aff'd sub nom. *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 191 L. Ed. 2d 511 (2015).

## A. Subject Matter Jurisdiction

The district court properly found the court had subject matter jurisdiction. Per the Declaratory Judgment Act, 28 U.S.C. § 2201, the court may "declare the rights and other legal relations of any interested party." "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941).

The district court correctly found that "the record of communication between the parties both before and after this suit was filed and the ongoing TTAB [Trademark Trial and Appeal Board] proceedings paint a clear picture of a 'substantial controversy' that is 'definite and concrete' enough to be addressed by

3

the Court." Although Embarcadero highlights it never threatened litigation, Embarcadero (1) asserted the elements of trademark infringement in its opposition to Delphix's registration for its word mark and petition to cancel Delphix's logo mark, (2) represented it saw no way forward with Delphix's use of DELPHIX as its company name or for its products and services during settlement talks, and (3) refused to sign a covenant not to sue Delphix for its use of the DELPHIX mark after Delphix brought this action. Without a declaratory judgment, Delphix would be forced to either play it safe and change its company and product name, thereby foregoing the goodwill and incurring transition costs, or push forward and risk having to destroy infringing product, pay additional damages, and disgorge profits to Embarcadero. These circumstances are ripe for a declaratory judgment.

## B.  Personal Jurisdiction

The district court erred in finding there was no personal jurisdiction. There are two categories of *in personam* jurisdiction. In 1984, the Supreme Court explicitly recognized the distinction between what has come to be called "general jurisdiction" and "specific jurisdiction." 4 Wright, et al., Fed. Prac. & Proc. Civ. § 1067.5 (4th ed. 2018) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)); *accord BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) ("[W]e have distinguished between specific or case-linked jurisdiction and general or all-purpose jurisdiction.").

4

A general jurisdiction inquiry is very different from a specific jurisdiction inquiry. "Unlike the specific jurisdiction analysis, which focuses on the cause of action, the defendant and the forum, a general jurisdiction inquiry is dispute blind, the sole focus being on whether there are continuous and systematic contacts between the defendant and the forum." 4 Fed. Prac. & Proc. Civ. § 1067.5 (quoting *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999)); *see also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

"[A] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business. *Id.* at 137. The exercise of general jurisdiction is not limited to these forums; in an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 138-39 & n.19.

"[C]ourts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have

jurisdiction." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987). "[O]ne cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place." *Id*. Accordingly, a general jurisdiction inquiry should consider all of a defendant's contacts with the forum state prior to the filing of the lawsuit, rather than just those contacts that are related to the particular cause of action the plaintiff asserts. 4 Fed. Prac. & Proc. Civ. § 1067.5. In determining "how far back from either the accrual or filing of the claim they will look; most courts use a 'reasonable time' standard yielding timeframes of roughly three to seven years." *Id*. (citing e.g., *Helicopteros*, 466 U.S. at 409–11 (seven year look)).

Here, Embarcadero is a Delaware corporation that maintained its headquarters in California up until at least October 2015. At that time, Embarcadero was purchased by Idera, Inc., a Texas-based company. Embarcadero claims that its headquarters are now in Austin, Texas. Understandably, it took months to transfer Embarcadero's headquarters and change its corporate records to reflect its new location. Plaintiff filed suit on February 4, 2016. In July 2016, Plaintiff gathered and proffered to the district court extensive evidence showing Embarcadero continued to represent that its headquarters were located in California.

For at least two decades Embarcadero's headquarters were located in California and it engaged in "continuous and systematic" activities within

6

California, including directing or performing all the alleged conduct which generates the subject matter jurisdiction for this suit. That conduct started in April 2012 and continued through May 2016. The purchase of Embarcadero by Idera, Inc. in October 2015 did not instantaneously dissolve the general jurisdictional nexus Embarcadero had established by its continuous and systematic operations in California.

Moreover, were these facts viewed through the lens of specific personal jurisdiction, the result would be the same. Critically, the instant action is about Delphix's right to *use* the DELPHIX mark as its business name and on its product (in light of Embarcadero's rights to the DELPHI mark). This issue is beyond the jurisdiction of the TTAB proceeding in Virginia, which only involved the disputed right to *register* the mark. As such, when Embarcadero challenged Delphix's right to *use* the DELPHIX mark during settlement talks in California, this conduct was not directed at Virginia, but rather was directed at Delphix in California, where both companies were operating at that time.

When every aspect of the case – from the parties to the underlying disputed rights – is completely centered in California, we cannot say the exercise of specific jurisdiction in California would be unfair or unreasonable. *See Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme*

7

*Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc). Costs are to be taxed against the Defendant-Appellee and Cross-Appellant Embarcadero Technologies, Inc..

**AFFIRMED IN PART; REVERSED IN PART.**

***Delphix Corporation v. Embarcadero Technologies*, Case No. 16-16572**
**Rawlinson, Circuit Judge, concurring in part and dissenting in part:**

I agree with the majority that the district court had subject matter jurisdiction. However, I do not agree that the district court erred in finding that it lacked general or specific personal jurisdiction.

The majority's overly expansive imposition of general jurisdiction, in a case in which the underlying dispute is limited to proceedings before the Trademark Trial and Appeal Board (TTAB) in Virginia, does not satisfy "the demanding nature of the standard for general personal jurisdiction over a corporation." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014). "Because the assertion of judicial authority over a defendant is much broader in the case of general jurisdiction than specific jurisdiction, a plaintiff invoking general jurisdiction must meet an exacting standard for the minimum contacts required." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citation and internal quotation marks omitted). "General jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, *i.e.*, comparable to a domestic enterprise in that State." *Id.* (citation and alteration omitted). "The paradigmatic locations where general jurisdiction is

1

appropriate over a corporation are its place of incorporation and its principal place of business." *Id.* (citation omitted). "Only in an exceptional case will general jurisdiction be available anywhere else." *Id.* (citation and internal quotation marks omitted).

Relying on a secondary source, the majority asserts that "a general jurisdiction inquiry should consider all of a defendant's contacts with the forum state prior to the filing of the lawsuit, rather than just those contacts that are related to the particular cause of action the plaintiff asserts." *Majority Disposition*, p. 6. However, the majority does not follow through in applying this standard for general jurisdiction because it fails to consider *all* of Embarcadero's contacts with California prior to Delphix's lawsuit. The record reflects that, prior to the filing of Delphix's lawsuit in February, 2016, Embarcadero transferred its principal place of business and associated operations to Texas. Laurie Crawford (Crawford), Embarcadero's Director of Human Resources, explained that, prior to its acquisition by Idera, Embarcadero relocated its main sales office and former CEO to Texas, and "[t]he only sales people that Embarcadero had outside of Texas pre-acquisition were a small number of specialty sales representatives." Crawford related that "[b]y January 1, 2016, there were no employees working in the San Francisco Embarcadero office location," and the remaining California employees

2

were IT specialists and software developers who were not in management positions. Crawford stated that, in February, 2016, only thirty-seven of Embarcadero's three hundred and twenty-four employees remained in California. Similarly, Atanas Popov (Popov), Embarcadero's General Manager, conveyed that "most all operations and all management were centered in Texas by the end of 2015." Chris Smith, Embarcadero's Chief Operating Officer, explained that all of Embarcadero's officers and directors resigned on October 9, 2015, and were replaced with officers and directors in Texas. Thus, Embarcadero amply demonstrated that its principal place of business was in Texas.

The listing of California addresses for Embarcadero in pre-litigation licensing agreements, trademark registrations, websites, social media posts, and other documents does not establish the requisite systematic contact for general jurisdiction. *See Majority Disposition*, pp. 6-7. Popov explained that, during the corporate transition, Embarcadero had "over 700,000 URL's or webpages" that were "modified in phases" with update prioritization for web pages generating the most significant business usage. Popov emphasized that "contact information on social media channels was not updated urgently as it [was] not used for sales . . ." Heidi Farris, Embarcadero's chief marketing officer, conveyed that, because Embarcadero is an online company, any listings of physical office addresses were

3

immaterial to its customers, and Embarcadero's license agreements were updated to reflect the Texas address. It is evident that Embarcadero was not "at home" in California such as to warrant the imposition of general jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) (explaining that "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State") (citation, alteration, footnote reference, and internal quotation marks omitted).

The majority's reliance on *Steel v. United States*, 813 F.2d 1545 (9th Cir. 1987) to support its conclusion that Embarcadero's near total relocation to Texas was immaterial is misplaced. *See Majority Disposition*, pp. 5-6. In *Steel*, we recognized that the defendant's move from one state to another was not controlling for purposes of *specific* jurisdiction. *See Steel*, 813 F.2d at 1549. We articulated that:

> When a court is exercising *specific* jurisdiction over a defendant, arising out of or related to the defendant's contacts with the forum, the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred. . . .

*Id.* (citation and internal quotation marks omitted) (emphasis added). Applying

this standard, we held that the defendant was subject to specific jurisdiction, not general jurisdiction, despite his move from California to Virginia, because the defendant's "contacts with California during the marriage, separation, and divorce proceedings determine whether the district court has personal jurisdiction over him in the declaratory judgment action." *Id.* at 1549-50. It was within the context of imposing specific jurisdiction that we observed that "one cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place." *Id.* at 1549 (giving the example of continuing jurisdiction for acts committed *while doing business* in the state) (citation omitted) (emphasis added). In contrast to the example of acts committed while doing business in the state, the "underlying events" involved in the present appeal occurred solely as the result of proceedings before the TTAB in Virginia, not in California, and Embarcadero had relocated its headquarters and operations to Texas prior to the ensuing litigation.[1] Simply stated, this is not the "exceptional case" where general jurisdiction exists outside the "place of incorporation [or the] principal place of business." *Ranza*, 793 F.3d at 1069.

---

[1] The majority maintains that Embarcadero "direct[ed] or perform[ed] all the alleged conduct" in California. *Majority Disposition*, p. 7. However, the majority fails to mention that "the alleged conduct" was singularly linked to the TTAB proceedings in Virginia, and not in California.

The majority's application of specific jurisdiction suffers from similar factual and legal deficiencies. *See Majority Disposition*, pp. 7-8. The majority's assertion that the facts supporting a finding of general jurisdiction also support imposition of specific jurisdiction, *see id.* at 7, "elide[s] the essential difference between case-specific and all-purpose (general) jurisdiction." *Daimler*, 571 U.S. at 132 (citation omitted). "There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citation, alteration and internal quotation marks omitted).

It is important to keep in mind the plaintiff's burden to "satisfy [ ] the first two prongs of the test." *Id.* (citation omitted). In other words, the plaintiff must establish that the defendant in this case "purposefully direct[ed] [its] activities toward the forum or purposefully avail[ed] [itself] of the privileges of conducting activities in the forum." *Id.* (citation and internal quotation marks omitted).

Delphix Corporation, as the plaintiff, failed to meet its burden of proof

6

because the record in this case points much more strongly toward a lack of specific personal jurisdiction than toward the existence of specific personal jurisdiction.

The majority seeks to impose specific personal jurisdiction on the basis that Embarcadero "directed conduct" toward Delphix in California "during settlement talks." *Majority Disposition*, p. 7 (emphasis added). However, purposeful direction requires the intentional commission of an act by the defendant that is "expressly aimed at the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017); *see also Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (applying purposeful direction test in trademark case because "it is akin to a tort case") (citations omitted). Indeed, Delphix acknowledges that the purposeful direction test applies. Under the purposeful direction test, Delphix is unable to demonstrate that Embarcadero's enforcement action before the TTAB in Virginia was intentionally directed at California. Indeed, the majority's approach belies the fact that the only action relating to the trademark dispute initiated by Embarcero was the trademark challenge before the TTAB. Embarcadero has never filed a lawsuit in California or elsewhere regarding Delphix's use of the trademark.

Importantly, there is absolutely no indication in the record that the settlement discussions relied upon by the majority as a basis for specific jurisdiction were divorced from the TTAB proceedings. It also does not appear

that such discussions would have occurred in the absence of Embarcadero's enforcement action before the TTAB. Embarcadero's enforcement action does not otherwise involve California.

Notably, in *Morrill*, we affirmed the finding of a lack of personal jurisdiction despite these actions by the defendant: making phone calls into the forum state, sending snail mail and email to the forum state, filing civil actions in the forum state, and appearing *pro hac vice* in the forum state. *See* 873 F.3d at 1142-43.

To the extent the majority seeks to impose specific jurisdiction based on activities unrelated to Delphix's trademark claims that the majority deemed relevant for general jurisdiction, the Supreme Court has held otherwise. *See Majority Disposition*, p. 7 (stating that facts relating to general jurisdiction "when viewed through the lens of specific personal jurisdiction" would produce the same result); *but see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) (articulating that "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State")

8

(citation, alteration, and internal quotation marks omitted).

The majority asserts that the "instant action is about Plaintiff's right to *use* the DELPHIX mark as its business name and on its product (in light of Embarcadero's rights to the DELPHI mark)." *Majority Disposition*, p. 7. According to the majority, "[t]his issue is beyond the jurisdiction of the TTAB proceedings in Virginia, which only involved the disputed right to *register* the mark." *Id.* (emphasis in the original). But it is unclear how the TTAB's limited jurisdiction over certain claims demonstrates that Embarcadero purposefully directed its activities toward California. *See Morrill*, 873 F.3d at 1142 (explaining that purposeful direction requires "[a]n intentional act" rather than the results of that act, "even the most direct, immediate, and intended") (citation omitted).

The majority maintains that specific jurisdiction exists because "when Embarcadero challenged Delphix's right to *use* the DELPHIX mark during settlement talks in California, this conduct was not directed at Virginia, but rather was directed at Delphix in California, where both companies were operating at the time." *Majority Disposition*, p. 7 (emphasis in the original). This is precisely the approach that the Supreme Court has rejected as untenable for exercising specific jurisdiction. The Supreme Court has emphasized that "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on

9

intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Our analysis "looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (citation omitted). "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285 (citations omitted). Indeed, "the mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 291. The majority's reliance on the fact that "settlement talks in California" were "not directed at Virginia, but rather to Delphix's right to use the mark in California and abroad" contravenes these limits on specific jurisdiction. *Majority Disposition* at 7. Under the majority's approach, any time a licensor seeks to enforce its rights before the TTAB or other agencies pursuant to a licensing agreement, it would automatically be subject to the jurisdiction of the forum state in which the licensee is located, particularly if the licensor engaged in settlement discussions regarding the use of the license. However, neither the mere existence of a licensing agreement nor settlement discussions regarding that agreement supports such an expansive application of personal jurisdiction unmoored from actions directed at the forum

10

state by the defendant.  *See id.*  I am not prepared to extend our precedent that far.

I respectfully dissent.